**Jerry Bartlett JONES, Jr.,
Petitioner–Appellant,**

v.

**Tana WOOD, Respondent–Appellee.**

No. 96–35499.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1997.

Decided June 12, 1997.

**1004**

David Zuckerman, Seattle, WA, for petitioner–appellant.

Donna H. Mullen, Assistant Attorney General, Olympia, WA, for respondent–appellee.

Before: REINHARDT and THOMAS, Circuit Judges, and SEDWICK *, District Judge.

## OPINION

THOMAS, Circuit Judge:

Jerry Jones claims he is innocent of the first degree murder of his wife. He contends compelling evidence implicates another person, proof which his lawyer failed to investigate before trial despite Jones's entreaties. The district court granted summary judgment denying Jones's petition for a writ of habeas corpus under 28 U.S.C. § 2254. We reverse and remand.

### I.

Sometime around 9:45 p.m. on Saturday, December 3, 1988, Jones pounded on the door of his neighbors Graham and Paulette Smith. When Graham answered, Jones thrust his nearly five-year-old son Thomas into the Smith's house, said that Lee, his wife, was hurt and bleeding badly, and then ran back to his own house. After putting Thomas in his wife's care, Graham went over to Jones's house, where he found Jones in the kitchen with a towel wrapped around his hand. When Graham asked what happened, Jones replied that Lee had been "stabbed all over" and was bleeding everywhere. Jones

---

* Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by    designation.

told Graham that he had been hit over the head and stabbed. When he came to, he found Lee in the bathroom stabbed and bleeding.

At trial, Jones testified that he had been in the master bedroom preparing to take a shower while Lee was taking a bath. He heard her scream and immediately ran into the hallway, where he saw a man with a knife coming out of the bathroom. In terror and as a defensive instinct, Jones swung his hand in the direction of the knife blade, cutting his hand. The intruder pushed Jones out of his way, and Jones hit his head against the wall. While this stunned Jones, he said he did not believe he lost consciousness, although he did not know for certain.

Upon recovering, Jones went into the bathroom, where he found Lee in the bathtub bleeding profusely. She was struggling and trying unsuccessfully to speak. He tried to lift her out of the bathtub, but he slipped and fell onto the side of the tub in the process. Thomas then came into the bathroom asking what had happened and why his mother was hurt. Jones took Thomas back to his bedroom, but Thomas, who was scared and crying, kept returning to the bathroom. Jones decided to get Thomas out of the house and took him over to the Smith's.

When the police arrived, Jones was wearing blue jeans stained with blood from his knees down to his ankles, and one of his hands was wrapped in a towel. Jones gave essentially the same account of events to the police as he had given to Smith. An examination of his head revealed no sign of any trauma. Jones had several cuts on his right hand. The murder weapon, a fish filleting knife that Jones and his daughters said they had never seen before, was found on the bathroom floor near Lee's body. A check of the rear of the house revealed a garage door ajar on the south side of the house, facing away from the street and toward a wooded area beyond Jones's fenced-in backyard. There were no signs of forced entry or any blood or footprints near the garage door. No usable prints were ever found in the house or on the knife. The forensic examination later revealed several hairs on the hands

and body of Lee Jones. An autopsy revealed she had sixty-three stab wounds on her body.

The police were unable to identify a motive for the killing. However, because they knew Jones was in the house when his wife was killed, and because they found no evidence of an intruder either entering or exiting the house, the police arrested Jones and charged him with second degree murder.

Jones's father hired an attorney to represent Jones and determine who had actually killed Lee Jones. Jones's lawyer in turn hired an investigator to help with the case. The investigator was expressly directed to investigate Danny Busby, a friend of Jones's daughter Elizabeth, whom Jones believed the person most likely to have committed the murder.

Jones suspected Busby because Busby and Lee had several heated arguments in October and November of 1988 over Busby's teasing of Thomas. On one occasion, Jones had escorted Busby from the house and told him never to return. Busby was not permitted to speak with Elizabeth on the telephone, but he would continue to call the Jones's asking for her, and Jones would simply hang up. On the day of the murder, Busby had called twice, both times urgently demanding to speak with Elizabeth, the second time just two hours before the murder. Busby also matched the physical description of the murderer Jones had given to the police the night of the murder—young, about Jones's size, and white. Unknown to Jones at the time, other information developed by a post-trial investigator would further implicate Busby.

On December 4, 1988, the day after the murder, Jones called Elizabeth from the jail where he was being held and asked her to find out where Busby was on the night Lee was killed. Elizabeth called Busby's sister, who said that Busby had not spent the night at home and that she thought Busby had spent the night at a friend's house. When Elizabeth called that friend, however, he said Busby had not spent the night at his house. Jones relayed this information to his lawyer.

On January 10, 1989, Jones sent his attorney a note describing a conversation Elizabeth had told him she had with Busby prior

to the Jones's family vacation the previous summer. Busby threatened to break into the Jones's house, go through Elizabeth's room, and steal something. When Elizabeth told him her home was "tight" and that he would not be able to break in, Busby responded that he knew how to get in. On January 12, 1989, Jones sent his lawyer a note from Elizabeth confirming this information. The note also indicated that Busby had sneaked through the Jones's chain link fence to tap on Elizabeth's window at least four times, and that she would sometimes let him in.

In late March or early April of 1989, Jones's lawyer told him that the prosecutor was threatening to increase the charge to first degree murder unless Jones pleaded guilty to second degree murder and accepted a ten-year sentence. Jones's lawyer said that he had told the prosecutor Jones would not plead guilty because he did not kill his wife. On June 1, 1989, the state filed an amended information charging Jones with first degree murder.

Jones urged his attorney to examine the physical evidence. Jones explained that the blood on his jeans could not have been Lee's because the side of the bathtub blocked his feet and legs from her. He believed the blood could only have come from his own hand wounds. Jones thought this would help his case because it was inconsistent with the state's theory that Jones was the murderer and that Lee's killer would necessarily have a great deal of her blood on him. Jones's lawyer wrote the prosecutor on March 8 and April 3, 1989 requesting to inspect all the physical items the police seized at the scene. However, Jones's lawyer did not examine the physical evidence until July 7, 1989, three days before the trial was to begin, and never tested the jeans.

After viewing the evidence, Jones's attorney told him on July 7, 1989 that there was no physical evidence of any significance. He did not tell Jones of the hairs found on Lee's hands and body, and he never had them tested. Jones asked how the investigation of Busby was proceeding, and his lawyer responded that there had been no investigation because he felt that Busby had an "ironclad

alibi"-the police reports indicated that Busby was at home on the night of the murder, as did both Busby and his mother.

The jury found Jones guilty of first degree murder as charged. After the verdict, Jones's lawyer moved for a new trial based on "newly discovered evidence" Jones's new investigator had discovered implicating Busby in the crime. The investigator learned in an interview with Elizabeth that Busby had written Elizabeth numerous smutty letters containing crude remarks and sexual references to both her and her mother. Busby was aware that Jones and his wife routinely went dancing on Saturday nights. During October and November of 1988, Busby had visited Elizabeth at the Jones residence on at least six Saturday nights, always arriving past 9:00 p.m. while Jones and Lee were out dancing, and was familiar with every part of the house. On the day of the murder, Elizabeth had spoken with Busby and told him she would probably stay home while her parents went out dancing. During his visits, Busby would tease and torment Thomas, frequently growling at him to scare him. Thomas had reported similar growling on the night of the murder. Several keys had been stolen from Elizabeth's book bag while at school, including a key to the garage door found ajar on the night Lee was murdered, and Elizabeth suspected Busby had stolen them because he frequently took other articles from her book bag. The new investigator also discovered that Busby and a friend had been near the Jones's residence at 9:30 p.m. on the night of the murder, placing Busby within a one minute bicycle ride of the Jones residence roughly fifteen minutes before the murder. The court denied Jones's new trial motion.

Jones appealed his conviction to the Washington Court of Appeals asserting, among other arguments, that there was insufficient evidence to support his conviction and that the trial court abused its discretion in denying his motion for a new trial. The court upheld the conviction, concluding that while the State of Washington's case was based primarily on circumstantial evidence, "viewing the evidence in the light most favorable to the State, a rational trier of fact could find

Jones guilty of first degree murder." The court also upheld the denial of the motion for a new trial, reasoning that the "newly discovered evidence" could have been discovered before trial by the exercise of due diligence, that the evidence implicating Busby was speculative and immaterial, and that its admission would not have changed the verdict. The Washington Supreme Court denied discretionary review.

Subsequently, Jones filed a personal restraint petition in the Washington Court of Appeals arguing that he was denied effective assistance of counsel because his trial lawyer (1) did not conduct an adequate pretrial investigation and (2) did not adequately explore with him the ramifications of the plea offer by the State and Jones's possible alternatives to proceeding to trial. The court dismissed the petition, and the Washington Supreme Court affirmed the denial.

On December 29, 1994, Jones filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 with the district court against Tana Wood, Superintendent of Washington's prison system. The petition raised two claims: (1) insufficiency of the evidence and (2) ineffective assistance of counsel. In his memorandum of points and authorities supporting the petition, Jones raised three separate issues with regard to the ineffective assistance of counsel claim, namely that his trial lawyer failed: (1) to investigate Busby adequately prior to trial, (2) to investigate the physical evidence adequately, and (3) to advise Jones competently about the prosecutor's plea offer. The district court referred the case to a magistrate judge on January 9, 1995.

Jones filed two motions with the court on February 24, 1995 in connection with his ineffective assistance of counsel claim. The first was a motion for discovery seeking documents from his trial lawyer, his investigators, and the trial prosecutor concerning the defense pretrial investigation, written communications between Jones and his trial lawyer, and the prosecutor's plea offer. The second was a motion for expansion of the record, asking the court to order the FBI laboratory to conduct tests on the physical evidence that his lawyer had failed to perform. The magistrate judge denied the motions on March 22, 1995 as premature because Wood had not yet been able to respond to the petition.

On July 17, 1995, Wood moved for summary judgment. Wood asserted that the evidence, when viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find Jones guilty beyond a reasonable doubt. Wood also argued that, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Jones had not demonstrated that his trial lawyer was ineffective for (1) failing to investigate the evidence against Busby further before trial or (2) failing to advise Jones competently regarding the prosecutor's plea offer. Jones filed an opposition to Wood's motion for summary judgment.

On December 12, 1995, the magistrate judge issued his Report and Recommendation in which he advised the district court to grant summary judgment for Wood. In connection with the ineffective assistance of counsel claim, the Report and Recommendation advised granting summary judgment on both claims Wood addressed in the motion for summary judgment as well as on the claim that Jones's trial attorney failed to investigate the physical evidence adequately, an argument Jones raised in his habeas petition but that Wood neither identified nor argued in the motion for summary judgment.

Jones renewed his February 24, 1995 motions for discovery and expansion of the record and then timely objected to the Report and Recommendation. Jones argued that summary judgment should not be granted while his motions were pending. He further argued that the magistrate judge did not conduct an independent review of the state court record and that Wood never even contested his ineffective assistance of counsel claim regarding failure to examine the physical evidence.

In a one-page order entered on February 21, 1996, the district court adopted the magistrate's Report and Recommendation. The court granted Wood's motion for summary judgment, denied Jones's petition for a writ of habeas corpus, and dismissed Jones's

pending motions for discovery and expansion of the record as moot. After his motion for reconsideration was denied, Jones timely appealed.

## II.

We review a grant of summary judgment denying a writ of habeas corpus de novo. *Carriger v. Lewis*, 971 F.2d 329, 332 (9th Cir.1992). When reviewing the sufficiency of the evidence to support a conviction, we must determine whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). If *no* rational trier of fact could find proof of guilt beyond a reasonable doubt, the writ of habeas corpus must issue. *Payne v. Borg*, 982 F.2d 335, 337 (9th Cir.1993). "The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Walters*, 45 F.3d at 1358.

██ "In considering a petition for a writ of habeas corpus, the district court is required to 'make its determination as to the sufficiency of the state court findings from an independent review of the record, or otherwise grant a hearing and make its own findings on the merits.'" *Richmond v. Ricketts*, 774 F.2d 957, 961 (9th Cir.1985) (quoting *Turner v. Chavez*, 586 F.2d 111, 112 (9th Cir.1978)). *See also Lincoln v. Sunn*, 807 F.2d 805, 808 (9th Cir.1987) ("This court may not affirm a district court's denial of a writ of habeas corpus unless the court either held a hearing, or the record shows that the district court independently reviewed the relevant portions of the state court record.").

██ In this instance, the magistrate judge did not hold a hearing. Therefore, he was obligated to conduct an independent review of the state court record. Unfortunately, the record before the magistrate judge did not include the state court trial transcript.[1] The magistrate judge's opinion contains no evidence that the transcript was examined. Accordingly, we have no alternative but to reverse. *See Vicks v. Bunnell*, 875 F.2d 258, 259 (9th Cir.1989) (reversing and remanding district court's denial of writ of habeas corpus because the district court was obligated to review the entire record but did not have the state court trial transcript to review). That Jones did not include the state court record as part of his habeas petition is of no import. Where review of the entire state court record is necessary and the parties have failed to supply the court with that record, the district court has the duty to obtain that record itself. *Ruff v. Kincheloe*, 843 F.2d 1240, 1243 (9th Cir.1988).

Further, the magistrate judge's review was cursory at best. The actual trial evidence is neither discussed nor analyzed. Because it appears that the magistrate judge neither held a hearing nor independently reviewed the state court record, we must reverse the district court's denial of the writ and remand to permit the district court to engage in the required independent review, including a review of the state court trial transcript.

## III.

██ Jones argues that the district court should not have granted summary judgment to Wood on the ineffective assistance of counsel issue without first ruling on the merits of his outstanding motions for discovery and expansion of the record. Wood argues that Jones was not entitled to any discovery because a habeas petitioner may only engage in discovery on issues that are to be considered in an already-scheduled evidentiary hearing.

Even if Wood were correct that discovery is appropriate only when an evidentiary hear-

---

**1.** Defense counsel contended at oral argument that she personally handed the transcript to the district court clerk. We have no reason to doubt this statement. However, the transcript is not part of the district court record and numerous telephone calls to the district court clerk's office failed to produce them. Accordingly, we must rely upon the official record as transmitted by the district court.

ing is ordered, she would lose here because, as we hold *infra*, an evidentiary hearing is required in this case. More important, contrary to Wood's argument, discovery is available to habeas petitioners at the discretion of the district court judge for good cause shown, regardless of whether there is to be an evidentiary hearing. Rules Governing § 2254 Cases Rule 6(a); *Calderon v. United States Dist. Court for N. Dist. of Cal.*, 98 F.3d 1102, 1104 (9th Cir.1996).

Jones's motion for discovery sought to obtain documents from his trial lawyer, his pretrial investigator, and the prosecutor in his case. Jones sought three categories of documents from his trial counsel: (1) copies of the notes Jones had given to his lawyer at the Snohomish County Jail on December 8, 1988; (2) copies of reports of pretrial interviews conduct by his lawyer and the defense investigators; and (3) copies of all documents which discuss or otherwise relate to the prosecutor's plea offer. From his pretrial investigator, Jones sought all documents relating to the pretrial investigation, and from the prosecutor, all documents relating to the plea offer.

Jones's motion for expansion of the record, which we treat as a discovery motion, sought a court order for the FBI laboratory to conduct tests on the clothes Jones was wearing the night of the murder as well as on blood samples from both Lee and himself. He urged in the supporting affidavit that the tests would show that the blood on his clothing came from the cut on his hand rather from his wife's wounds. Jones contended that he needed this material to argue effectively that his trial lawyer had rendered ineffective assistance. We believe this to be "good cause," particularly given that there was never any hearing for the ineffective assistance claim at the state-court level.

In *Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir.1996), the Eighth Circuit reversed a district court's refusal to permit a habeas petitioner alleging ineffective assistance of counsel to conduct DNA and other tests on the physical evidence where the petitioner consistently maintained his innocence and claimed the test results could exonerate him. Noting that "a court's denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts," *id.* (internal quotation marks omitted), the court believed that discovery was essential for Toney to prove his ineffectiveness claim:

> Given the nature of Toney's allegations, we conclude that Toney has shown good cause for discovery under Rule 6. Toney has claimed throughout his postconviction proceedings that he is innocent of the crime and that his counsel was ineffective for failing to pursue his claim of mistaken identity or to obtain state's evidence so as to conduct scientific examinations. In order to prove the prejudice prong of his ineffective assistance claim, Toney is entitled to have access to this evidence through discovery. The district court abused its discretion in denying his discovery requests.

*Id.* See also *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 1091–92, 22 L.Ed.2d 281 (1969) ("[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."), *quoted in* Rules Governing § 2254 Cases Rule 6(a) advisory committee's notes; *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995) ("Denial of an opportunity for discovery is an abuse of discretion when the discovery is necessary to fully develop the facts of a claim.").

Just as in *Toney*, discovery is essential for Jones to develop fully his ineffective assistance of counsel claim. In particular, the test results may establish the prejudice required to make out such a claim. We reverse the district court's grant of summary judgment on the ineffective assistance of counsel issue and remand to permit Jones to engage in the requested discovery,[2] except

---

2. Although the motion to expand the record asks the district court to command the FBI to test the blood evidence and Jones's clothing, the district court could simply order Wood to make the evidence available for discovery. Further, if necessary for Jones to engage in discovery effective-

for the discovery as to the offered plea agreement. We decline to order discovery on the plea agreement because Jones is not entitled to an evidentiary hearing on that issue (*infra*, Section IV.D.).

## IV.

### A.

Jones also argues that the court should have held an evidentiary hearing on his ineffective assistance of counsel claim. We agree.

■ A habeas petitioner is entitled to an evidentiary hearing as a matter of right on a claim where the facts are disputed if two conditions are met: (1) the petitioner's allegations would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir.1992).

Because Jones seeks to have an evidentiary hearing on his claim for ineffective assistance of counsel, he must demonstrate that his allegations, if proven, would establish such a claim. To establish a claim of ineffective assistance of counsel, a party must prove that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Harris v. Wood*, 64 F.3d 1432, 1435 (9th Cir.1995). A counsel's performance is deficient if, considering all the circumstances, it falls below an objective standard of reasonableness measured under prevailing professional norms. *Id. See also United States v. Vaccaro*, 816 F.2d 443, 455 (9th Cir.) (deficient performance exists if "counsel failed to exercise the skill, judgment, or diligence of a reasonably competent attorney").

Prejudice is shown when "there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Harris*, 64 F.3d at 1435 (quoting *Strickland*, 466 U.S. at

ly, the district court may appoint counsel to assist him. Rules Governing § 2254 Cases Rule

695, 104 S.Ct. at 2068–69). *See also Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). The ultimate question to be answered is whether counsel's errors "so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 998–99, 89 L.Ed.2d 123 (1986). In a federal habeas action, a claim of ineffective assistance of counsel presents a mixed question of fact and law meriting de novo review. *Sanders v. Ratelle*, 21 F.3d 1446, 1451 (9th Cir.1994) (citing *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070).

In his petition, Jones argued three separate issues with respect to his ineffective assistance of counsel claim that his trial lawyer: (1) failed to investigate Busby adequately prior to trial, (2) failed to investigate the physical evidence adequately, and (3) failed to advise Jones competently about the prosecutor's plea offer. We shall discuss each briefly.

### B.

■ If Jones's allegations were proven, they would establish that his lawyer failed to investigate suspect Busby prior to trial and this failure prejudiced Jones's defense. Jones alleges that, despite his constant pleading, his trial lawyer refused to investigate Busby at all pretrial, telling Jones that Busby had an "ironclad alibi." However, Elizabeth had discovered that alibi to be untrue the night after the murder, and Jones had informed his attorney of this well before the trial.

His trial lawyer submitted an affidavit suggesting his failure to investigate Busby was a strategic decision to conserve defense resources. Even if this decision could be considered one of strategy, that does not render it immune from attack-it must be a *reasonable* strategy. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all

6(a).

the circumstances, applying a heavy measure of deference to counsel's judgments," and "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions...." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066–67. Taking Jones's allegations as true, he establishes that his lawyer's representation was deficient.

The "prejudice" prong of the *Strickland* test is also satisfied because raising the specter of Busby's involvement in the murder attacks the heart of the prosecution's case. Perhaps if there were other evidence of Jones's guilt, this error would not loom quite so large. However, even the state conceded it had a weak, circumstantial case against Jones devoid of motive and resting in large part on the nonexistence of any other likely suspect. Under these circumstances, failing to investigate Busby's potential involvement to exhaustion was a grave error. *See Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986) ("[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case."). Jones's allegations could raise a reasonable doubt that Jones was the killer. Thus, the district court should have held an evidentiary hearing on this claim.

### C.

■ Jones claims further ineffective assistance of counsel by virtue of his attorney's failure to test the physical evidence. His lawyer never made any attempt to test the blood on Jones's clothing or the hairs found on Lee's hands and body. Relying solely on *Strickland*'s presumption that "under the circumstances, the challenged action might be considered sound trial strategy," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (internal quotation marks omitted), and without opining as to what this strategy could be, the magistrate judge held that "[w]hile defense counsel may have been outside the 'wide range of professionally competent as-

sistance' in not testing and presenting 'exculpatory' physical evidence," Jones failed to overcome the presumption that his trial lawyer's failure ever to test any of the physical evidence was "sound trial strategy." We find this reasoning troubling. It is a unique strategy indeed that is incompetent-"outside the 'wide range of professionally competent assistance' "-but yet still manages to be "sound trial strategy." *See Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066–67 (trial strategy must be reasonable).

Wood argues that by not having the physical evidence tested himself, his trial lawyer was able to emphasize before the jury the State's failure to test the physical evidence, the unfairness of the police investigation, and the existence of reasonable doubt as to whether Jones was the perpetrator. While this might arguably have been a "sound trial strategy," Jones alleges, with evidentiary support, that this simply was not his lawyer's strategy. Rather, his lawyer repeatedly indicated his intention to test the evidence. Jones suggests his attorney failed to follow through with these intentions because he was distracted by other trials he was conducting around the same time he was preparing Jones's defense. Given Jones's assertions, we cannot presume that his lawyer's actions were the product of a strategic decision. Even if failing to test the physical evidence was part of his lawyer's trial strategy, under the circumstances of this case, where Jones insisted the tests would help establish his innocence, *see Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066–67 (reasonableness of trial strategy must be measured against "counsel's conversations with the defendant"), we believe it would not be sound and would clearly fall below the *Strickland* level.

When an attorney fails to examine potentially exculpatory evidence, although he repeatedly assured the petitioner of his intention to do so, the *Strickland* presumption that the failure is "sound trial strategy" is surmounted. In *Sims v. Livesay,* 970 F.2d 1575, 1580 (6th Cir.1992), the court observed that examination of a quilt for gunshot residue might establish whether it was between the gun and the victim at the time the shot was fired and seriously undermine the

State's theory that the victim was shot from a distance. Counsel failed to have the quilt examined, and the court found this error rose to the level of ineffective assistance, holding that counsel's failure to have potentially exculpatory physical evidence examined "cannot be characterized as a reasonable exercise of professional judgment." *Id. See also id.* at 1581 ("counsel's failure to investigate key evidence may not be excused").

If Jones is correct that the blood on his jeans is his and not Lee's, that would seriously undermine the prosecution's case, since a crucial State theory is that the murderer would necessarily have been covered in Lee's blood and could not have exited the house without leaving blood traces. The prosecution would have to concede that whoever killed Lee would not necessarily have been covered in her blood, and its main argument that an intruder could not have killed Lee disappears. Further, if the tests indicate that the hair found on Lee's hands and body did not come from either Lee or Jones, Jones's claim that an intruder killed Lee is substantially strengthened. At this stage in the proceedings, there is no requirement that Jones provide evidence corroborating his allegations of what the test results will show. The only question is whether Jones's allegations, if proven true, would entitle him to relief. *Hendricks,* 974 F.2d at 1103. These test results, combined with the fact that the garage door was found ajar, could raise a reasonable doubt that Jones killed Lee. Jones has therefore satisfied the necessary prerequisites for an evidentiary hearing on this issue as well.

### D.

■ Jones further argues that his trial lawyer failed to inform him of the prosecution's offer of a plea bargain before he rejected it on Jones's behalf. Although we believe this contention, if proven, might rise to the level of ineffective assistance of counsel, Jones has failed to prove prejudice. In order to prove prejudice where counsel fails to inform the petitioner about a plea offer, the petitioner must prove there was a reasonable probability he would have accepted the offer. *United States v. Blaylock,* 20 F.3d 1458,

1466–67 (9th Cir.1994); *United States v. Day,* 969 F.2d 39, 45 (3d Cir.1992). Jones's contention that he would have "cut his losses" and accepted the plea offer if he believed it was open to him, is implausible in light of what Jones knew at the time the offer was made. His lawyer told him, and correctly so, that the State's case was weak. Even had his lawyer informed Jones of the plea offer, it is improbable that Jones would have accepted the offer in the face of his lawyer's correct assessment of the weakness of the State's case and Jones's own steadfast and unmoving claims of innocence. While we have no doubt Jones would prefer the plea offer of ten years to the sentence of 320 months imposed after his conviction, we do not find a reasonable probability that at the time of the offer Jones would have agreed to serve ten years in prison for a crime he insisted he did not commit rather than go to trial and face not terribly convincing evidence against him.

Accordingly, because Jones cannot establish prejudice with regard to his lawyer's failing to inform him of the prosecutor's plea offer, he would not be entitled to relief based on this issue of ineffective assistance and is therefore not entitled to a hearing on this issue.

### E.

■ Wood argues Jones was not entitled to an evidentiary hearing because he failed to develop the material facts at the state-court level. This argument is unavailing. As Jones correctly argues, he did not develop the facts on this claim in the state court because he was never given the opportunity to do so: the Washington Court of Appeals dismissed his personal restraint petition containing his ineffective assistance of counsel claims without a hearing.

Further, the Washington state courts would not have permitted him to rely on extra-record material in arguing his ineffective assistance claim. *State v. McFarland,* 127 Wash.2d 322, 899 P.2d 1251, 1257 (1995). Because extra-record material is frequently crucial in determining the merit of such claims, *see, e.g., United States v. Sitton,* 968 F.2d 947, 960 (9th Cir.1992) ("Ineffective assistance claims are ordinarily reviewed only

in collateral proceedings because such claims usually cannot be resolved without the development of facts outside the original record."), he hardly could have fully developed the facts on direct appeal. The only vehicle by which he could have brought material outside the record to the court's attention was by way of a personal restraint petition. *McFarland*, 899 P.2d at 1258.

Having tried and failed through no fault of his own to develop the facts relevant to his ineffective assistance claim at the state-court level in the only permissible manner, he clearly establishes the "cause" portion of the *Keeney* "cause and prejudice" test. *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 11, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992). The "prejudice" portion coincides with the prejudice a petitioner must show to sustain a claim of ineffective assistance of counsel.

### F.

Thus, we hold that Jones is entitled to an evidentiary hearing on the issues of his attorney's failure to investigate Busby before trial and his lawyer's failure to test the evidence. He is not entitled to an evidentiary hearing on his lawyer's alleged failure to inform him of the potential plea agreement.

### V.

■ Finally, Wood argues that the amendments to 28 U.S.C. § 2254 contained in the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (the "AEDPA") should apply to Jones's habeas petition. In this circuit, the AEDPA does not apply to cases filed in the federal courts prior to the Act's April 24, 1996 effective date. *Jeffries v. Wood*, 103 F.3d 827, 827 (9th Cir.1996). Because Jones filed his habeas petition in the district court on December 24, 1994, the pre-AEDPA version of § 2254 governs the analysis of his petition.

As in *Jeffries*, however, it is appropriate here to consider the potential impact of the AEDPA "in the interest of completely deciding the issues presented and avoiding any further delay should our retroactivity analysis be altered by the Supreme Court in its pending decision" in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc), *cert. granted*, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir.1997).

■ Application of the AEDPA in this case would neither affect the appropriateness of an evidentiary hearing before the district court nor preclude habeas relief on the merits of Jones's claims. As amended by section 104(4) of the AEDPA, 28 U.S.C. § 2254 provides that a district court shall not hold an evidentiary hearing "[i]f the applicant has failed to develop the factual basis of [the] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). It is clear that Jones did not "fail[ ] to develop" the factual basis of either of his claims; rather, the state courts denied him the opportunity to develop the facts by failing to hold an evidentiary hearing. Where, as here, the state courts simply fail to conduct an evidentiary hearing, the AEDPA does not preclude a federal evidentiary hearing on otherwise exhausted habeas claims. The facts developed in the course of the evidentiary hearing, in turn, would enable the district court to determine whether Jones qualifies for habeas relief under the AEDPA on the ground that the state courts' denial of his petition was contrary to clearly established law as announced by the Supreme Court—in this case, the requirement of effective assistance of counsel as announced in *Strickland*. Finally, the district court's duty to ascertain the sufficiency of the evidence by engaging in a thorough review of the complete state court record is unaffected by the AEDPA. Without such a review of the record, it is impossible to determine whether the state court adjudication rested on an "unreasonable application" of clearly established federal law or an "unreasonable determination" of fact. AEDPA, § 104(3), 110 Stat. at 1219 (amending 28 U.S.C. § 2254).

### VI.

We reverse and remand to allow the district court to conduct an independent review of the state court record, including the trial transcript, in relation to Jones's insufficiency

claim and to enable Jones to engage in his requested discovery and present his ineffective assistance claim at an evidentiary hearing.[3]  Of course, we do not prejudge the outcome of that hearing, but Jones's issues as presented here are sufficient to overcome summary judgment.

REVERSED AND REMANDED.

---

**3.**  Our disposition in this case renders unnecessary consideration of the district court's failure to advise Jones, a pro se prisoner, of the requirements of Rule 56 of the Federal Rules of Civil Procedure before entering summary judgment against him, as required by *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir.1988).  Nor need we address Jones's contention that the district court failed to conduct a de novo review of those portions of the magistrate judge's Report and Recommendation to which he had objected, as required by 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  We express no opinion on these issues.