137 F.3d 1172
 98 Cal. Daily Op. Serv. 1670, 98 Daily Journal
D.A.R. 2305,
98 Daily Journal D.A.R. 2473
Anthony Lee TOTTEN, Petitioner-Appellant,
v.
William A. MERKLE, Warden; Attorney General of the State of
California, Respondents-Appellees.
 No. 97-55109.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1998.
Decided March 9, 1998.
 
 Abby Besser Klein, Los Angeles, California, for petitioner-appellant.
 Joyce N. Burnett, Deputy Attorney General, San Diego, California, for respondents-appellees.
 Appeal from the United States District Court for the Central District of California; Linda H. McLaughlin, District Judge, Presiding. D.C. No. CV-95-00447-LHM.
 Before: LAY,* GOODWIN and REINHARDT, Circuit Judges.
 Opinion by Judge LAY; Dissent by Judge REINHARDT.
 LAY, Circuit Judge.
 
 
 1
 Anthony Lee Totten, a California state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Totten claims denial of his right to a fair trial and ineffective assistance of counsel in his conviction for attempted murder and infliction of great bodily injury. He contends representation was deficient because trial counsel failed to present a defense that methamphetamine intoxication and paranoia prevented Totten from forming the requisite intent to kill. The district court adopted the magistrate judge's report and recommendation and denied the writ. We affirm.
 
 I. Background
 
 2
 Totten was convicted in 1991 of "willful, deliberate and premeditated" attempted murder in connection with the 1990 shooting of his estranged, pregnant wife in Santa Ana, California. Evidence presented at trial showed that Totten and his wife Janet had separated and attempted to reconcile several times during 1990. She became pregnant with Totten's third child, but moved out with their two children in October 1990. There were several incidents in which Totten became violent with his wife, including one in which he threatened to kill her. She sought and was granted a restraining order against him on October 26, 1990.
 
 
 3
 On October 30, 1990, Janet was returning to her car following a doctor's appointment when Totten approached her, holding a long white box. He told her the box contained a doll swing for their daughter. Totten asked if he could put the box in the car and have a ride to a nearby construction site where he was working. Mrs. Totten agreed, but once inside the car, Totten pulled a rifle out of the box. At trial, Totten contended he brought the gun to elicit sympathy from his wife or, failing that, to commit suicide.
 
 
 4
 Totten and his wife struggled with the rifle inside the car. Witnesses testified they then saw Janet running and screaming from the car with Totten following. Totten raised and fired the rifle, hitting Mrs. Totten in the head. Witnesses testified that Totten walked over and nudged her with his foot, then walked away and tossed the rifle in a trash bin.
 
 
 5
 Extensive evidence was presented at trial showing planning and deliberate action taken by the petitioner prior to and during the shooting. Three days before the incident, Totten purchased a weapon and ammunition. Sometime between then and the day of the shooting, he painted over the red lettering of the rifle box to disguise it as a birthday present for his daughter. On the day of the shooting, Totten waited outside the medical building for his wife to complete her appointment. When she came outside, Totten followed her, stated the box was a birthday present, and convinced his wife to let him inside of the car.
 
 
 6
 Totten's defense at trial was that the rifle fired accidentally. Mrs. Totten survived the shooting, but was left deaf in one ear. Totten was convicted by a jury and was sentenced to a life term plus three years.
 
 
 7
 Totten subsequently filed three petitions for habeas relief in state courts, all of which were denied. Totten's petition for federal habeas relief was filed in the U.S. District Court for the Central District of California in May 1995.
 
 
 8
 Totten contends he was denied a fair trial and the effective assistance of counsel when his trial counsel failed to pursue a defense based on Totten's longtime use of methamphetamines. Totten claims he told his attorney he had been on a "speed binge" in the days leading up to the shooting, and that he was "high" and "out of it." In describing his lawyer's reply, Totten states: "He said that [I] did drugs, [Janet] did drugs and he didn't want to get into the drugs." Totten's trial counsel apparently contacted an unnamed forensic psychiatrist, who told him that methamphetamine use could not prevent a person from forming the specific intent to kill.
 
 
 9
 In his habeas petition, Totten presented a declaration to the district court from Dr. Ronald K. Siegel, a specialist in "psychopharmacology," stating that Totten suffered from methamphetamine intoxication and paranoia, and that this could have formed the basis of a mental-state defense. Habeas counsel also prepared a proposed declaration for the trial counsel's signature concerning the facts in the case. However, trial counsel did not sign the declaration. Habeas counsel submitted the unsigned declaration to the district court in support of the habeas petition.
 
 
 10
 On October 30, 1996, a magistrate judge filed a report recommending denial of the habeas petition. The district court adopted the magistrate's report and recommendations and denied the petition with prejudice on November 18, 1996.
 
 II. Ineffective assistance of counsel
 
 11
 Under the standard set by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), to establish a claim of ineffective assistance of counsel, a petitioner must show that: 1) counsel's performance was deficient, falling below the level of "reasonably effective assistance," and 2) the deficient performance produced prejudice to the defense.
 
 
 12
 Totten claims trial counsel made at best only a cursory investigation into a mental impairment defense. On the other hand, the state argues trial counsel made a strategic decision to forego the defense since he felt it would be prejudicial to the defendant to pursue a drug-related defense. Counsel did contact a forensic psychiatrist and was told a mental-state defense based on the petitioner's methamphetamine use was not feasible. However, this psychiatrist never examined Totten, and his expertise in the field is not known. Neither this expert's name nor credentials has been presented to this court.
 
 
 13
 Totten asserts that the declaration of Dr. Siegel shows a mental impairment defense was at least viable. He argues that trial counsel's failure to properly investigate evidence to support such a defense fell below the level of "reasonably effective assistance." Contrary to the magistrate judge's report, we will assume for purposes of argument that Totten's habeas petition satisfies the first prong of the Strickland standard.
 
 
 14
 Under Strickland, a showing of deficient trial counsel performance is not enough to establish a successful habeas claim. A petitioner also must establish that prejudice resulted from the deficient performance. See, e.g., Bloom v. Calderon, 132 F.3d 1267, 1270-71 (9th Cir.1997); Harris v. Wood, 64 F.3d 1432, 1435 (9th Cir.1995). In other words, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
 
 
 15
 Given the facts and circumstances of this case, the magistrate judge held the petitioner could not demonstrate such prejudice. He relied upon the fact that there was overwhelming evidence presented at trial of planning and deliberate action by Totten. Thus, he found a mental-impairment defense based on methamphetamine intoxication and paranoia was completely at odds with Totten's actions. The court held it is not "reasonably probable" that, even if presented, the jury would have altered its verdict. We must agree.
 
 
 16
 Petitioner relies upon the declaration of Dr. Siegel. Dr. Siegel filed an affidavit stating: "Anthony continued to sniff methamphetamine right up to minutes before the shooting of his wife on October 30, 1990.... The physical attack on his wife and the shooting happened quickly, reflexively." CR 3 at 30. The magistrate judge found the overwhelming weight of evidence showed that the attempted murder of Janet Totten was anything but quick and reflexive. Totten purchased a rifle three days prior to the shooting. He painted over the box to disguise the weapon and concocted an elaborate plan to get close to his wife. Following the shooting, he purposefully nudged the victim with his foot to make sure she was hit before tossing his weapon into a trash bin and leaving on foot. In addition, there was related evidence as to Totten's conversations and actions during the week prior to the shooting which demonstrated Totten's cognitive role.[1]
 
 
 17
 We deem it significant also that the vast majority of information upon which Dr. Siegel bases his opinion was from conversations with Totten in late 1993 and early 1994. Totten's testimony at trial was full of inconsistencies and, as the verdict demonstrates, was not believed by the jury. It is highly unlikely that the jury would have found Dr. Siegel's opinion, based upon information provided by Totten himself, credible or persuasive.
 
 
 18
 In short, we find it only speculative that the presentation of a mental impairment defense based on methamphetamine use was likely to change the outcome of the jury verdict. The magistrate judge found that the representation by counsel did not undermine confidence in the verdict. Because there was no prejudice, the magistrate judge denied petitioner's habeas claim. The district court agreed with the conclusion. In view of the existing record, we think the conclusion unassailable.
 
 III. Request for an evidentiary hearing
 
 19
 Totten argues that, at the very least, he is entitled to an evidentiary hearing to determine whether counsel's decision was, in fact, a strategic one based on an informed decision. In habeas proceedings, an evidentiary hearing is required when the petitioner's allegations, if proven, would establish the right to relief. See, e.g., Campbell v. Wood, 18 F.3d 662, 679 (9th Cir.1994); Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756-57, 9 L.Ed.2d 770 (1963), overruled on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). However, an evidentiary hearing is not required on issues that can be resolved by reference to the state court record. Campbell, 18 F.3d at 679 (citing Bashor v. Risley, 730 F.2d 1228, 1233 (9th Cir.1984)); see also United States v. Moore, 921 F.2d 207, 211 (9th Cir.1990); United States v. Birtle, 792 F.2d 846, 849 (9th Cir.1986) (evidentiary hearing is not required if " 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' ") (quoting 28 U.S.C. § 2255).
 
 
 20
 The magistrate judge determined that no prejudice resulted from the failure to present the defense. It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise. See Campbell, 18 F.3d at 679.
 
 
 21
 Totten claims that a mental-state defense based on drug-induced paranoia is "not ipso facto inconsistent" with a defense of unintentional shooting. Appellant's Opening Br. at 31. If there was any question on how these defenses interacted, Totten argues, then an evidentiary hearing is required. Id. at 32. We disagree. There is ample evidence in the record to demonstrate that a mental impairment defense was wholly inconsistent with Totten's actions, and was unlikely to alter the jury's verdict. The petitioner could argue at an evidentiary hearing, as he does here, that the defense was not inconsistent. However, such an assertion flies in the face of logic in light of the glaring inconsistencies showing Totten's deliberate acts which are easily discernible from the record. We do not believe that an evidentiary hearing would alter this finding.
 
 
 22
 Finally, Totten takes issue with the district court's reliance on the proposed declaration of Totten's trial counsel that was submitted to the court unsigned.[2] However, this reliance by the district court also does not support Totten's call for an evidentiary hearing.
 
 
 23
 First, because it was Totten's habeas attorney who offered this document into evidence, it qualifies as an admission of a party. Under the federal rules, a statement made by an attorney is generally admissible against the client. See, e.g., Hanson v. Waller, 888 F.2d 806, 814 (11th Cir.1989); Williams v. Union Carbide Corp., 790 F.2d 552, 555 (6th Cir.1986). Under Fed.R.Evid. 801(d)(2), an admission offered by a party is not hearsay at all, and is therefore admissible against that party.
 
 
 24
 Second, the unsigned declaration was only relied upon by the magistrate judge to determine the diligence of Totten's trial attorney in investigating a mental impairment defense. Nothing in the declaration goes to the question of prejudice. Therefore even if the document was relied upon in error, it does not affect the validity of the record in regard to prejudice, or the findings of this court.
 
 
 25
 There is no indication from the arguments presented that an evidentiary hearing would in any way shed new light on the question of prejudice. Even if the petitioner's allegations of deficient representation were proven, it would not establish the right to relief. No remand to the district court is required.
 
 IV. Conclusion
 
 26
 Trial counsel's failure to pursue a mental impairment defense based on use of methamphetamines may have fallen below the level of reasonably effective assistance. However, the evidence is clear on the record that no prejudice resulted from any deficient representation. We conclude that petitioner has failed to establish a reasonable probability that even with the defense, the result of the proceeding would have been different. Because of the petitioner's inability to meet the second prong of the test for ineffective assistance of counsel under Strickland, supra, the judgment of the district court is hereby AFFIRMED.
 
 
 27
 REINHARDT, Circuit Judge, dissenting.
 
 
 28
 The majority rejects Totten's claim of ineffective assistance of counsel on the ground that he has failed to demonstrate prejudice. Because I think Totten may have been prejudiced by his trial counsel's deficient performance, and is entitled to an evidentiary hearing on that question, I dissent.
 
 
 29
 Of the two parts of the Strickland test for ineffective assistance of counsel, the majority assumes for purposes of argument that Totten has satisfied the first, involving an inquiry into whether counsel's performance was deficient. (majority at 2076). I believe that the performance of Totten's trial attorney clearly fell below the standard of reasonably effective assistance: Counsel chose to present a single theory of defense at trial based entirely on the premise that Totten's shooting of his wife was pure accident. He proceeded with this strategy despite the "overwhelming" evidence that Totten planned the course of action leading up to the shooting of his wife.[1] What brings counsel's performance below the standard of effective assistance was his failure to explore an obvious alternative defense of mental impairment. Although Totten had been hospitalized for psychiatric reasons only three months prior to his commission of the crime, his attorney rejected the mental impairment defense without having a psychiatrist or any other mental health expert examine him. Without adequate investigation, counsel could not possibly have made an informed strategic choice to reject the impairment defense. His statement that he "didn't want to get into the drugs" further reveals his determination to dismiss without reason what may have been the only legitimate theory of defense. Counsel's uninformed decision to reject without inquiry a plausible defense of mental impairment when the theory he intended to offer was almost certain to fail constitutes deficient performance.
 
 
 30
 As for the second component of the Strickland test, the majority concludes that, even assuming Totten's attorney's performance was deficient, confidence in the outcome at trial was not undermined. The principal flaw in the majority's conclusion is its acceptance of the magistrate judge's determination that a theory of mental impairment "based on methamphetamine intoxication and paranoia was completely at odds" with Totten's deliberate planning. (majority at 1174-75). The problem with this conclusion is the utter absence of evidence in the record to support it. The only expert medical opinion tending to show the effects of methamphetamine intoxication on one's mental capacity was the declaration of Dr. Siegel. His declaration stated that paranoia and intoxication from methamphetamine could have formed the basis for a mental-state defense in Totten's case. Despite the absence of any expert testimony to the contrary, the magistrate judge determined that it would have been impossible for someone intoxicated with methamphetamine who was experiencing paranoia to act in the manner in which Totten acted. The magistrates judge's nonexpert theorizing, however, cannot serve as the basis for a finding that methamphetamine intoxication and paranoia are inconsistent with Totten's conduct.
 
 
 31
 The second problem with the majority's analysis is its reliance upon its determination that Dr. Siegel's declaration was unconvincing: "It is highly unlikely that the jury would have found Dr. Siegel's opinion, based upon information provided by Totten himself, credible or persuasive." (majority at 1175).[2] The question I address, however, is not whether the affidavit is sufficient to warrant the issuance of a writ of habeas corpus, but whether it is sufficient to warrant an evidentiary hearing.
 
 
 32
 Given Dr. Siegel's sworn assertions and the absence of any countervailing evidence, Totten is entitled to an evidentiary hearing at which he can develop an adequate factual record. Such a hearing is required if two conditions are met: first, Totten's allegations, if proved, would establish his right to relief; and second, the state court has not reliably found the relevant facts. Jones v. Wood, 114 F.3d 1002, 1010 (9th Cir.1997). Totten has alleged two critical facts that tend to show prejudice: first, that methamphetamine intoxication and paranoia are not inconsistent with deliberate action, and second, that at the time of the shooting he was suffering from methamphetamine intoxication and paranoia which seriously impaired his mental capacity. If Totten successfully proves these allegations, he will seriously undermine the prosecution's case because the state would not be able to show that he intended to kill his wife. Lacking one of the requisite elements of attempted murder, the jury might still have convicted Totten of a lesser offense-but it could not have convicted him of the offense of which he was found guilty.
 
 
 33
 The majority relies upon our decision in Campbell v. Wood, 18 F.3d 662, 679 (9th Cir.), cert. denied, 511 U.S. 1119, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994), to justify its denial of Totten's request for an evidentiary hearing. It fails to note, however, that in Campbell the district court actually conducted such a hearing. At that hearing, Campbell was afforded the opportunity to examine his state trial and appellate counsel, as well as three other witnesses, to determine whether he received ineffective assistance of counsel. Totten has never been given an opportunity to develop a proper evidentiary record regarding his trial counsel's performance and its impact on the outcome of his trial. The state court denied his habeas petition without a hearing. In Jones, this court rejected the government's argument that the petitioner was not entitled to an evidentiary hearing because he failed to develop the material facts at the state-court level. Jones, 114 F.3d at 1012. We reasoned that because the state court dismissed his petition without a hearing Jones was denied an opportunity to develop the relevant facts. Id.
 
 
 34
 Here, an evidentiary hearing would give Totten his first opportunity to present expert testimony regarding the effects of methamphetamine intoxication and paranoia on his capacity to act deliberately. Because Totten's claim cannot be resolved simply by reference to the state court record, and because Totten would be entitled to relief if he could successfully prove that he was mentally impaired at the time of the shooting, I believe that the majority errs in denying his claim without affording him an evidentiary hearing. Accordingly, I respectfully dissent from the majority's conclusion that Totten was not prejudiced by his trial counsel's deficient performance. I would remand the case to the district court so that it may conduct an evidentiary hearing that would enable Totten to develop a factual record in support of his claim of ineffective assistance of counsel.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 For example, on October 23, 1990, Mrs. Totten called the petitioner to pick up the children from the babysitter. In response, Totten came to the bank where Mrs. Totten was employed and stated he had no money to buy dinner for the children. She gave him money. Later, Mrs. Totten decided not to have Totten pick up the children. He then came to the bank and threatened to file suit for divorce. Totten followed her to the babysitter and cut her tire. She asked the babysitter to use the phone and Totten came in the house and grabbed the phone
 On October 24, 1990, Totten waited for Mrs. Totten outside her home. Mrs. Totten called the police and requested help in obtaining a restraining order. On Friday, October 26, 1990, Totten appeared in court and asked Mrs. Totten when her next doctor appointment was scheduled. She replied October 30, 1990. Totten appeared after her appointment with the white box. The events leading up to the shooting thereafter occurred.
 
 
 [2]
 Totten also contends the court "erred in describing as a 'finding of fact' a mere reference to an undisputed aspect of the evidence." Appellant's Opening Br. at 34. The magistrate's initial recommendation (issued prior to objections filed by the parties) stated that "[b]ecause [Dr. Siegel] does not opine that Petitioner lacked the intent to kill his wife, his testimony would have had questionable probative value even if it had been presented at petitioner's trial." CR 16 at 10
 In the magistrate's final recommendation, he states: "Significantly, petitioner does not respond to the magistrate judge's finding that, even if the declaration were admitted at trial, it would be of questionable probative value" (emphasis added). CR 18 at 3.
 Totten disputes that the "observation" of the court may in any way be characterized as a "finding of fact." Appellant's Opening Br. at 36-37. Regardless of what term the magistrate used, it is clear from the report that Dr. Siegel's failure to directly respond to the intent to kill question was only one of the factors relied upon by the magistrate in concluding that the declaration would have questionable probative value. The semantics chosen by the magistrate in no way affects the substance of our decision.
 
 
 [1]
 See magistrate judge's opinion as quoted in majority opinion at 1174-75
 
 
 [2]
 The majority states that it "deems it significant also that the vast majority of information upon which Dr. Siegel bases his opinion was from conversations with Totten in late 1993 and early 1994." (majority opinion at 1175). In Dr. Siegel's declaration, however, he specifically states that "[m]y conclusions are not based solely upon what Anthony told me and, indeed (as would also be true in other cases of this type), I would not have reached these conclusions based alone on what Anthony told me." Furthermore, he listed the materials he reviewed in order to make his assessment: "Specifically, I have reviewed the police reports; the defendant's medical and psychiatric records; toxicology reports on the defendant's blood and urine; transcripts of trial testimony by both the defendant and the victim, Janet Carol Totten; and copies of undated handwritten notes from the defendant to the victim. In addition, I conducted a series of extensive psychopharmacological interviews with Anthony Lee Totten ... I also conducted an interview with witness Georgia Quill."