**Neil R. SHUMATE, Petitioner,**

v.

**Anthony NEWLAND, Respondent.**

**No. C98–04472 WHA.**

United States District Court, N.D. California.

Dec. 7, 1999.

Michael R. Snedeker, Snedeker Smith & Short, Attorneys at Law, Portland, OR, Thomas M. Burton, Pleasanton, CA, Juliet B. Haley, CA State Attorney General's Office, San Francisco, CA.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING

ALSUP, District Judge.

### INTRODUCTION

Petitioner, a California state prisoner incarcerated at California State Prison, Solano, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising 15 claims with numerous subparts. Applying the deference to state court determinations required by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, the Court rejects each claim raised. The petition is DENIED.

### STATEMENT

On February 6, 1995, an Alameda County, California, jury convicted Neil R. Shumate of 16 counts of sexual misconduct involving minors. The jury further found to be true a number of charged special allegations. On August 17, 1995, the trial judge sentenced petitioner to a state prison term of 12 years. Petitioner appealed his conviction to the California State Court of Appeal, First Appellate District ("state

court of appeal"). At the same time, he filed a petition for writ of habeas corpus in the same court. In an opinion that disposed of both matters, the state court of appeal reversed as time-barred four convictions for acts of sexual misconduct involving petitioner's ex-foster child James Halloway ("Halloway convictions"). Otherwise, the court upheld petitioner's convictions. Petitioner next petitioned the California Supreme Court for direct review of the state court of appeal's holdings. That court denied review, and this petition followed.

Petitioner was a long-time kindergarten teacher accused of sexually molesting a series of children. At one point during the investigation, a Pleasanton Police Department detective publicly announced the existence of as many as 70 victims. In pursuit of those allegations, Pleasanton detective Michael Dunn, the lead detective in the case, interviewed approximately 29 children. Prior to each interview, Dunn instructed the parents not to explain to their child the reason for the interview, and to tell the child that Dunn was a friend of the family. Dunn began each interview in the presence of the parents, then asked the child if it was alright for Dunn to speak with the child alone. Once alone, Dunn asked each child whether the child knew what the child's private parts were, and whether the child understood the difference between "good" and "bad" touches. Dunn further asked each child to indicate on a sketch whether they ever had been touched in any location that made them feel uncomfortable.

After a brief break, during which the parents joined Dunn and the child, Dunn and the child resumed their interview alone, this time in more detail. Unbeknownst to each child, Dunn taped the second half of the interview. When the interview was over, Dunn asked the families not to discuss the case with anyone, lest the investigation fuel rumors regarding petitioner's guilt.

Of the children interviewed, seven claimed that petitioner had molested them.

Petitioner also was charged with sexual misconduct in relation to several foster children who lived in petitioner's home at various times during the period of July 1988 to June 1993. All in all, petitioner was charged with 25 counts of sexual misconduct. The first were lodged June 2, 1994, in the form of a 10–count information filed by the Alameda County District Attorney. The information alleged acts of lewd and lascivious conduct toward six of petitioner's former students, in violation of California Penal Code Section 288(a). With respect to the first seven counts, the information further alleged that petitioner occupied a position of special trust and committed an act of substantial sexual conduct. The next 15 counts were contained in a grand jury indictment handed down August 30, 1994. The indictment charged seven more violations of Section 288, as well as four alleged violations of Penal Code Section 220 (assault with intent to commit a lewd and lascivious act against a child under 14 years of age) and four alleged violations of Penal Code Section 288(b) (commission of a lewd and lascivious act with force on a child under the age of 14 years of age). With respect to eleven of those counts, the information further alleged that petitioner committed a violation of Section 288 against more than one victim, and that petitioner had a substantial sexual relationship with a child under age 11 while occupying a position of special trust.

Petitioner's jury trial began November 30, 1994. On December 19, 1994 the prosecutor moved to dismiss eight counts ("Pearce counts") of the indictment. The counts alleged the sexual abuse by petitioner of foster child Steven Pearce, who lived in petitioner's home from August 1998 through March 1989, when the child was 11 years old. The prosecutor described that alleged abuse during her opening statement. Prior to calling the child to testify, however, the prosecutor informed the trial court that the child had become incompetent as a witness. One

other charge was dropped at the close of the prosecution's case.

The prosecution's case in chief contained other evidence of alleged conduct for which petitioner was not convicted or, in some cases, charged. Perhaps the most damaging was the testimony of Daniel Bromberg, a former teaching aide to petitioner. Bromberg testified that, on the afternoon of the last day of the 1980–1981 school year, petitioner admitted to Bromberg that petitioner had a sexual interest in his students, the boys in particular. Bromberg testified that petitioner further stated on that afternoon that petitioner had engaged in a sexual relationship with one of petitioner's foster children.

On January 31, 1995, Danielle Barrantes, Kacie and Christina Buna, Eric Scanlon, Ariel Grajeda, and Cody Daniel filed, through their parents as Guardians Ad Litem, a civil action against petitioner and the Pleasanton Unified School District. They sought recovery of damages for the petitioner's molestation of them in the open class room. The case settled on June 6, 1996, for the costs of defense.

## ANALYSIS

In AEDPA, Congress further narrowed the *habeas corpus* jurisdiction of federal courts as it applies to persons in state custody pursuant to the judgment of a state court. As before, under 28 U.S.C. § 2254(a), federal courts may entertain only petitions that claim a violation of federal law. Under Section 2254(b), the applicant must demonstrate that he or she has "exhausted the remedies available in the courts of the state", that there is no available state remedy, or that any such remedy is, under the circumstances, ineffective to protect the rights of the applicant. Even if the exhaustion requirement is met, no petition can be granted unless the alleged violation of federal law meets yet further requirements. With respect to state court factual determinations, any determination of a factual issue is presumed to be correct and the applicant has the

burden of rebutting the presumption of correctness by clear and convincing evidence. If the applicant failed to develop the factual basis for a claim in the state court proceeding, then the federal court may not hold an evidentiary hearing on the claim unless the applicant shows that (i) the claim relies on a new and retroactive rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence; (ii) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense; or (iii) the state court refused to permit development of the facts relevant to the claim. *Baja v. Ducharme*, 187 F.3d 1075, 1078–9 (9th Cir. 1999).

The most restrictive amendment made by AEDPA concerns legal determinations made by a state court, it is not enough to demonstrate that the state court erred in interpreting federal law. It must be further shown that the erroneous legal determination was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or that it was an unreasonable application of Supreme Court precedent.

Petitioner challenges his conviction on fifteen grounds with multiple subparts. The Court heard oral argument for more than two hours. The Court has had considerable difficulty in tracking the arguments of petitioner's counsel and in verifying petitioner's assertions against the record. Nonetheless, the Court has reviewed each and every argument and finds them without merit, especially when measured against the deference demanded by AEDPA.

### 1. Vagueness

Petitioner claims that California Penal Code Section 288(a) is both vague and overbroad.[1] Petitioner bases his conten-

1. These arguments were considered and rejected by the state court of appeal.

tion on the California Supreme Court's interpretation of the statute, as set forth *People v. Martinez,* 11 Cal.4th 434, 45 Cal.Rptr.2d 905, 903 P.2d 1037 (1995). The *Martinez* court held that, to support a conviction under Section 288(a), a touch need not appear lewd to a "member[ ] of the mainstream population" so long as it is effected with the requisite intent. *Id.* at 452, 45 Cal.Rptr.2d 905, 903 P.2d 1037. The intent, the court further held, must be inferred from the circumstances in which the touch is made. *Ibid.* Petitioner argues that, interpreted as such, the statute could encompass almost any touch of a minor—even one that was not objectively lewd—so long as that touch were found to have been effected with lewd intent. This, says petitioner, is unconstitutionally vague.

█ This argument is a sleight of hand. Petitioner was convicted almost nine months before *Martinez* was published. The vagueness issues does not arise on the jury instructions under which petitioner actually was convicted. The language of Section 288(a) limits the law's application to "lewd or lascivious act[s]" performed with the specific intent of "arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Thus, Section 288(a) requires the conjunction of a specific type of act and a well-defined mental state. The jury instructions reflected that prerequisite. The instructions required the jury to find "a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator" (RT 2630–32). Given that specificity, an in light of the previously outlined standards, this Court finds that Section 288(a) is neither vague on its face nor vague as applied to petitioner.

█ To avoid unconstitutional vagueness, a statute "must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Nunez v. City of San Diego,* 114 F.3d 935,

940 (9th Cir.1997). A statute will be held to adequately define an offense where it conveys a "sufficiently definite warning as to the proscribed conduct when measured by common understandings and practices." *Panther v. Hames,* 991 F.2d 576, 578 (9th Cir.1993), quoting *Turf Center, Inc. v. U.S.,* 325 F.2d 793, 795 (9th Cir.1963).

## 2. Failure to Exclude Evidence

Petitioner argues that the trial court improperly failed to exclude three types of evidence: the testimony of Daniel Bromberg, described above; evidence related to the Pearce counts; and evidence related to the Halloway convictions.[2] As discussed below, the Courts disagrees with each of petitioner's contentions.

### A. Bromberg Testimony

█ Petitioner argues that the Bromberg testimony was substantially more prejudicial than probative of petitioner's intent, and that its admission therefore violated petitioner's right of due process. The admission of evidence in a state trial is not subject to federal habeas review unless it violates a specific constitutional right. *Henry v. Kernan,* 177 F.3d 1152, 1159 (9th Cir.1999). Petitioner must show that there were no permissible inferences to be drawn from admitted evidence and that the evidence is "of such quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp,* 926 F.2d 918, 920 (9th Cir.1991), quoting *Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir.1986).

█ The Bromberg testimony was relevant to negate petitioner's defense that the events in question were nothing more than a series of innocent mistakes, i.e., that there had been no lewd intent. The fact that petitioner had molested, by his own admission, a foster child in his home, could reasonably be considered to show that petitioner intended to commit the acts charged. At the very minimum, the deci-

---

2. Each of these claims was presented to, and rejected by, the state court of appeal.

sion was not an unreasonable application of any Supreme Court precedent.

## B. Evidence of Pearce Counts

The eight Pearce counts were read to petitioner's jury and were referred to in the prosecutor's opening statement. The Pearce counts concerned the forcible sexual abuse of one of petitioner's foster children. Then the counts were dropped by the prosecution. Petitioner argues that, given the attention drawn to the Pearce counts, it would have been impossible for the jury to disregard them when weighing petitioner's guilt with respect to the remaining charges. Petitioner therefore concludes that the failure of the trial court to declare a mistrial upon dismissing the Pearce counts violated petitioner's due process rights.

 The "independent and adequate state ground doctrine" bars federal habeas corpus relief when a state court has declined to review a prisoner's federal claims "because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Petitioner's trial counsel failed to object to the dismissal of the Pearce charges or to move for a mistrial. Quite the opposite, he stipulated—on the record—to waive on appeal any argument related to the dismissal. In general, a California defendant is barred from raising on appeal prosecutorial misconduct unless a timely assignment of misconduct was made in the trial court, along with a request for a curative instruction. *People v. Pinholster,* 1 Cal.4th 865, 942, 4 Cal.Rptr.2d 765, 824 P.2d 571 (1992). That rule was cited by the state court of appeal[3]—and, this Court assumes, relied upon by the California Supreme Court— when those tribunals rejected petitioner's claim. *See Ylst v. Nunnemaker,* 501 U.S. 797, 802–3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (holding that a later decision reject-

ing a claim without discussion should be presumed to rest on the same grounds as a previous reasoned opinion on the claim). It thus appears that petitioner procedurally defaulted his claim regarding the Pearce counts.

Petitioner has not demonstrated that the *Pinholster* rule was inconsistently applied by California courts or unclear at the time of his appeal and state habeas petition, *see Calderon v. U.S. Dist. Court,* 96 F.3d 1126, 1129 (9th Cir.1996) (requiring that the state procedural bar cited be "clear, consistently applied, and well-established at the time of the petitioner's purported default"). Nor has petitioner argued that his failure to object to the reading of the Pearce counts, or to move for a mistrial upon their dismissal, was otherwise excused. This Court therefore refuses to entertain this claim.

## C. Evidence of Halloway Convictions

Four of petitioner's convictions—all related to petitioner's ex-foster child James Halloway—were found by the state court of appeal to be time-barred, and therefore were reversed. Petitioner claims that the admission of evidence regarding those charges rendered his trial fundamentally unfair, in violation of his due process rights.

 Again, petitioner procedurally defaulted his claim by failing to object to evidence related to the Halloway convictions at trial. As the state court of appeal noted,[4] California defendant who fails to object at trial to impermissible character evidence has waived any related argument on appeal. *See People v. Escobar,* 48 Cal. App.4th 999, 1022, 55 Cal.Rptr.2d 883 (1996). As before, petitioner fails to argue that the rule in question was other than firmly established and consistently applied, or that good cause existed for his failure to

---

**3.** *People v. Shumate* and *In re Shumate,* A071967 and A080138, at 33–4 (California State Court of Appeal, 1st Dist., Feb. 27, 1998).

**4.** *Shumate* and *In re Shumate,* A071967 and A080138 at 19.

raise the issue at trial. Thus, petitioner's claim is procedurally defaulted.

### 3. Failure to Admit Evidence

Petitioner also claims that the trial court violated his constitutional rights by failing to admit evidence, including: evidence impeaching a victim who testified at petitioner's trial; certain testimony by petitioner's expert; and the testimony of the prosecutor. Again, the court denies petitioner's claims, as follows.

### A. Impeachment of Matthew Galleher

Before trial, petitioner received a copy of a report by Child Protective Services employee Tamara Clark regarding alleged acts of sexual misconduct by the petitioner. The name of the alleged victim, Matthew Galleher, had been redacted. During trial, petitioner discovered the identity of Galleher, who testified against petitioner. Petitioner later sought to impeach Galleher through Clark, based on a statement in the report that was inconsistent with Galleher's testimony. During an in camera hearing, however, Clark testified that Galleher's mother, and not Galleher, made the statement. Accordingly, the trial judge refused to permit petitioner to impeach Galleher with the statement. Nor was petitioner's trial counsel, Patrick Clancy, able to impeach Galleher through Galleher's mother—the only remaining alternative—because, prior to petitioner's trial, Galleher's mother had moved to North Carolina. That left Clancy with insufficient time to serve on Galleher's mother an out-of-state subpoena—a process that Clancy estimated at six to eight weeks.[5] Petitioner contends that the trial court's refusal to permit petitioner to impeach Galleher with the statement in question violated petitioner's Sixth and Fourteenth Amendment rights.

Petitioner's argument, of course, rests on the premise that Galleher, and not Galleher's mother, made the statement in question. As discussed above, under 28 U.S.C. § 2254(d)(2), a federal court shall not grant a state prisoner's application for writ of habeas corpus unless the underlying judgment is based on an "unreasonable determination of the facts in light of the evidence...." Here, petitioner has failed to put forth any evidence that Galleher made the statement, much less that the trial and appellate courts unreasonably construed Clark's plain testimony. Thus, petitioner's claim is denied.

### B. Restrictions on Petitioner's Expert

During trial, petitioner called as an expert witness Dr. Lee Coleman. Coleman testified regarding the potential of certain investigative techniques—including those used in petitioner's case—to influence the responses of interviewees, children in particular. The trial court refused to permit Coleman to opine, however, as the actual effect of techniques employed in petitioner's case on the testimony of prosecution witnesses who appeared at petitioner's trial. The trial court further refused to permit Coleman to impeach the testimony of a prosecution witness. Petitioner claims that these limitations infringed petitioner's Fourteenth Amendment and Sixth Amendment rights to due process and to present a defense, respectively.

The trial court allowed the jury to hear the testimony about the dangers of such techniques impermissibly influencing children's testimony. Counsel was free to argue that the children in question had been brainwashed and the jury was free to accept or reject that argument. The trial judge joined a long line of courts in refusing to allow an expert to speculate as to the truthfulness of another witness' testi-

---

5. In a declaration attached to petitioner's federal and state petitions as Exhibit 4, Clancy stated that he couldn't recall whether he asked for a continuance to serve the subpoena. The declaration stated, however, that any request for a continuance would have been "futile," given that the "trial court was constantly urging me to wrap up my case" (Clancy Decl. at p. 4).

mony. Petitioner's argument to the contrary is frivolous.

 The exclusion of evidence violates the Due Process Clause only where "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) quoting *Patterson v. New York,* 432 U.S. 197, 201–02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The state court of appeal concluded that the restriction placed on Coleman's testimony failed to violate any such right. This Court finds that application of federal law to be reasonable. Petitioner's due process argument therefore is rejected. *See also United States v. Hadley,* 918 F.2d 848, 852–3 (9th Cir.1990) (contrasting expert testimony regarding general tendencies of a class of persons, which is admissible, with expert testimony regarding the veracity of specific witnesses, the admission of which constitutes reversible error).

 Nor did the state court of appeal unreasonably apply constitutional law in rejecting petitioner's Sixth Amendment claim. "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . ." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The right, however, is not absolute. *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (holding that a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"). As the state court of appeal noted, Coleman testified extensively for petitioner. The only restrictions placed on Coleman were those in accord with accepted evidentiary law. Accordingly, petitioner's Sixth Amendment claim is denied.

### C. Testimony of Prosecutor

Petitioner attempted to call the prosecutor as a witness. The prosecutor had attended or participated in the interviews of children whose allegations resulted in new charges against petitioner. The trial court quashed the subpoena. Nevertheless, petitioner was given the opportunity to examine before the jury both the primary police investigator and the prosecutor's own investigator, who accompanied the prosecutor to the interviews. Petitioner claims his inability to examine the prosecutor violated his Sixth and Fourteenth Amendment rights.

 In light of the opportunity to present other witnesses to the same events, however, the trial court's decision to prevent petitioner from turning the trial into a circus by calling the prosecutor was understandable. Petitioner has not shown that this ruling in these circumstances was an unreasonable application of any Supreme Court precedent.

### 4. Alleged Prosecutorial Misconduct

### A. Brady Claims

#### i. Barrantes Statements

Danielle Barrantes was in petitioner's kindergarten class during 1992–93. Petitioner was charged with molesting her while in his class. Danielle testified that petitioner touched her breasts. Petitioner claims that he was prejudiced by the prosecutor's failure to disclose statements to the defense counsel concerning Danielle being molested by her cousin. These statements were made by Danielle's mother, Leslie Barrantes, during her deposition for the civil trial, and to prosecutor Jill Hiatt, investigator Cindy Hall, and Detective Michael Dunn. In the deposition, the mother stated that she had learned from her husband and Danielle that Danielle's cousin, Adam, had molested Danielle on at least three occasions. The mother gave one statement about those molestations to Hiatt and Hall, and a separate one to Detective Dunn. The California court of appeal stated that it appeared that the defense discovered this information the day after Danielle testified and that the information would not have made a differ-

ence in the outcome of the defense against the Danielle molestation charges. *Shumate* and *In re Shumate*, A071967 and A080138 at 49–50.

■ The standard of review is whether the error had a substantial and injurious effect or influence in determining the jury's verdict, not whether it was harmless beyond a reasonable doubt. Habeas petitioners can obtain habeas relief only if they establish that the misconduct resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

■ Under *Brady*, the prosecutor must turn over any evidence known to it that might create a reasonable doubt that otherwise would not exist. The omission of such evidence must be evaluated in the context of the entire case and a due process violation occurs if the defendant is denied a fair trial. *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Where the government discloses all the information necessary for the defense to discover the allegedly suppressed evidence on its own, the government is not guilty of failure to disclose evidence. *See United States v. Bracy*, 67 F.3d 1421, 1428–29 (9th Cir.1995).

Here, it appears from the record that the defense was well aware that Danielle had been molested by Adam. Jason Epperson stated in an interview that Danielle had sex with Adam. This interview was on December 16, 1994. HCP Exhibit 71. Respondent represents, and petitioner does not deny, that petitioner was aware of Jason's interview and that Danielle had been molested by her cousin. Respondent's Answer at 39. Petitioner implicitly admits to such knowledge in his traverse. Petitioner's Traverse at 13. Thus, the prosecutor did supply the evidence which petitioner claims was suppressed from him.

### ii. Taped Interviews

Petitioner claims that the prosecution failed to turn over approximately eight tapes of interviews of various witnesses made during the investigation that might contain material exculpatory evidence. The state court of appeal stated that although it appears that there existed some discrepancy over the actual number of tapes, the defense failed to make a prima facie case that this discrepancy was the result of prosecutorial misconduct. *Shumate* and *In re Shumate*, A071967 and A080138 at 49.

There was evidently some confusion over the exact number of tapes made during the investigation. Petitioner claims that he received 39 tapes. Petitioner relies on two letters sent by Harvey Shapiro, the defense investigator, to prosecutor Jill Hiatt and Detective Dunn before trial asking for all the tapes, and a phone message by Hiatt stating that there were 47 tapes made, to conclude that the prosecution withheld tapes.

The dispute over the number of tapes occurred before trial. Once trial began, there was no complaint by petitioner that he was still missing tapes. Thus, it appears from the record that at trial, petitioner did have all the tapes, or at least all that he wanted. Petitioner had an opportunity to raise any issue he wanted before trial and making a record of the actual facts. He did not do so. Having let the opportunity go by, petitioner cannot impugn the prosecutor based on speculation. Petitioner has not shown sufficient proof of any shortfall in production to carry his burden.

### iii. Unredacted Child Protective Services Report

Petitioner contends that the prosecutor violated *Brady* by turning over a redacted document and should have turned over the full document. In question was a report prepared by Child Protective Services employee Tamara Clark and concerning victim Matthew Galleher. Petitioner's investigator stated that he went to the prosecutor's office to pick up several documents, including the report in question, and was told that he had to

wait for the names to be redacted. Petitioner claims that his counsel, Clancy, asked for that report, but was told by the prosecutor that she did not have it. It is unclear from the record when Clancy made this request for the report. After trial, the unredacted report was subsequently used in a probation report.

At trial, defense counsel requested to impeach Matthew's testimony with the redacted report which evidently contradicted his testimony. The court held a hearing where Clark testified that she spoke only with Matthew's mother, not Matthew. Because there was no contradiction uttered by the witness, the defense counsel then withdrew his request. The full unredacted report does not, in fact, contain any statements made by Matthew. The trial court was correct to prohibit any such impeachment of Matthew. Matthew's mother did not take the stand during trial so the full report would not have been useful in impeaching her. No basis for relief is shown.

### B. Alleged "Deception" of the Grand Jury

When asked by petitioner's grand jury whether the state had uncovered any inconsistent or exonerating evidence, the prosecutor replied that it had not. Petitioner claims that, at the time the prosecutor made that statement, she was aware that two child witnesses to the grand jury had at one time or another denied, or failed to allege, that petitioner had abused them. Petitioner alleges that the prosecutor's "deception" of the grand jury violated California Penal Code Section 939.7, as well as his due process rights.[6] It is well settled, however, that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). This Court is unaware of a federal constitutional right to have all—or even any—exculpatory evidence presented to a grand jury. The most analogous cases deal with prosecutorial misconduct during

jury trials. And even those cases provide that a petitioner is entitled to federal habeas relief only if the prosecutor's remarks rendered the proceedings "fundamentally unfair." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (holding that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). The Court is unconvinced that, in light of the other evidence against petitioner, the prosecutor's comments rendered petitioner's conviction fundamentally unfair. This Court therefore declines to reverse the holding of the state court of appeal.

### C. Impeachment of Ruth Hoyt

During trial, the prosecutor cross examined defense witness Ruth Hoyt, a colleague of petitioner's, regarding statements that Hoyt allegedly had made about her own experience with having been sexually abused. Hoyt denied making the statements. The prosecutor therefore called to the stand the woman to whom Hoyt allegedly made the statements. According to that woman, Hoyt once admitted that Hoyt had been sexually abused. Rather than report the incident and seek professional help, however, Hoyt claimed that she and her husband prayed for Hoyt's healing. Petitioner claims that these tactics cast Hoyt as an apologist for child sexual abuse, thus undermining her credibility and violating petitioner's due process rights.

Petitioner procedurally defaulted his claim by failing to object at trial to the prosecution's allegedly unfair treatment of Hoyt. *People v. Pitts*, 223 Cal.App.3d 606, 807–8, 273 Cal.Rptr. 757 (1990). Petitioner does not argue that such default was excused for cause, or that a miscarriage of justice will result if the claim is not reviewed on the merits.

---

**6.** The state court of appeal rejected this argument, finding that, even if the prosecutor had mislead the grand jury, such misrepresentations failed to deprive petitioner of a fair trial.

## D. Alleged Misstatement of Facts in Closing Argument

■ Petitioner alleges that, during closing argument, the prosecutor several times misstated material facts. According to petitioner, such conduct denied him due process. As petitioner recognized in the state court of appeal, however, petitioner procedurally defaulted this claim by failing to object to the statements in question at trial. *See People v. Mincey,* 2 Cal.4th 408, 446, 6 Cal.Rptr.2d 822, 827 P.2d 388 (1992) (holding that a defendant must raise at trial objections to prosecutorial misconduct, lest he or she waive such arguments on appeal). This Court therefore will not consider petitioner's claim.

## E. Alleged Griffin Error

Petitioner claims that, during her closing argument, the prosecutor impermissibly drew attention to petitioner's failure to testify. When reviewing the evidence respecting one of petitioner's victims, Kacie Buna, the prosecutor said, "Was it [the touching] done with sexual intent? ... Given no reasonable other explanation, and you haven't heard one, there's only one possible answer.... It would be hard to say this youngster wasn't touched in a sexually indecent manner and with specific sexual intent. And no one has said that" (RT 2658).

■ Where a prosecutor asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's Fifth Amendment privilege against compulsory self-incrimination is violated. *Griffin v. California,* 380 U.S. 609, 612–5, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). A comment is impermissible if it "is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Lincoln v. Sunn,* 807 F.2d 805, 809 (9th Cir.1987). Prosecutors are not prohibited, however, from calling "attention to the defendant's failure to present exculpatory evidence more generally. *United States v. Lopez,* 803 F.2d 969, 973 (9th Cir.1986), *cert. denied* 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 530 (1987). Thus, courts have maintained a distinction between comments about the lack of explanation provided by the *defense,* and comments about the lack of explanation furnished by the *defendant.*" *United States v. Mayans,* 17 F.3d 1174, 1185 (9th Cir.1994) (emphasis in original).

■ The state court of appeal found that the prosecutor's comments referred not to petitioner's failure to testify, but to the state of the evidence. That tribunal therefore found no constitutional violation. This Court cannot say that holding represents an unreasonable application of *Griffin* and its progeny. Although petitioner might have been the most logical person to testify as to his state of mind, the prosecutor's comment was not directed at petitioner specifically. Rather, the comment drew attention to the failure of the defense generally to contradict the prosecution's evidence with respect to petitioner's intent toward Kacie Buna.[7]

## 5. Investigative Methods

Petitioner claims that the investigation into the charges against him was coercive

---

**7.** Moreover, even if this Court were to find the state court of appeal's conclusion unreasonable, it still would reject petitioner's claim. Even impermissible commentary on a defendant's failure to testify requires reversal only if "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and (3) where there is evidence that could have supported acquittal." *Jeffries v. Blodgett,* 5 F.3d 1180, 1192 (9th Cir.1993) (citation omitted), *cert. denied,* 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994). Petitioner complains of a single, brief comment made in reference to a single charge. Furthermore, the comment in question failed to stress an inference of petitioner's guilt. Lastly, the trial court cured any prejudice by explicitly instructing the jury not draw any inference from the petitioner's failure to testify (RT 2628).

and biased, and that investigators employed improper and overly suggestive interviewing techniques. As a result, petitioner alleges, many children who suffered no abuse by petitioner were led to testify that they had. Petitioner claims that the testimony of these individuals rendered his trial fundamentally unfair, thus violating his rights of due process.

A petition for writ of habeas corpus by a state prisoner shall be denied unless the petitioner first exhausts all available state remedies. 28 U.S.C. § 2254(b)(1). *See also Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir. 1988). Petitioner failed to assert this claim in either his state appeal or his state habeas petition. Nor has petitioner shown the unavailability of a state remedy. The Court therefore finds petitioner's claim unexhausted, and declines to review it.

## 6. Ineffective Assistance of Counsel

Petitioner presented his ineffective assistance of counsel claims to the state court of appeal. Under AEDPA, habeas relief can be granted only if the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is considered by the Ninth Circuit to be clearly established Federal law for analyzing ineffective assistance of counsel claims. *Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir.1999).

*Strickland* sets forth a two-step standard that must be satisfied in order to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. First, petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 668, 104 S.Ct. 2052. The question is not what counsel could have done, but whether the choices made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998). Judicial scrutiny of counsel's performance must be highly def-

erential, and a court must strongly presume that counsel's actions falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

Second, petitioner must show that counsel's performance prejudiced petitioner and deprived petitioner of a fair trial and reliable results. The petitioner must prove that but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. If the state's case is weak, there is a greater likelihood of a reasonable probability that the trial would have been different. *Johnson v. Baldwin*, 114 F.3d 835, 839–40 (9th Cir. 1997).

### A. Expert Testimony of Petitioner's Psychological State

Tom Burton replaced Patrick Clancy as petitioner's counsel on May 26, 1995, after the trial and before petitioner was sentenced. Burton had Dr. Steven Bucky evaluate petitioner for a bail motion. On January 29, 1996, Bucky interviewed petitioner and determined that petitioner did not exhibit the psychopathy usually associated with child sexual abuse. Petitioner claims that Clancy's failure to obtain and present such expert testimony at trial prejudiced petitioner. Petitioner claims that such evidence could have created reasonable doubt among the jurors as to whether petitioner's touching of the children was performed with the requisite intent. In a declaration attached to petitioner's state habeas corpus petition, Clancy responded to petitioner's charge. Clancy stated that he was familiar during petitioner's trial with the sometime use by defense attorneys of expert testimony regarding whether an accused demonstrates the characteristics of a sex offender. Clancy explained that he failed to employ such evidence, however, because it was too easily discounted by prosecutors.

 To be effective, defense counsel is under an obligation to present expert testimony when, in the absence of such

testimony, lay jurors are incapable of making reasoned judgments regarding the evidence. *Caro v. Calderon,* 165 F.3d 1223, 1227 (9th Cir.1999) (describing as ineffective assistance of counsel the failure to present expert testimony during the penalty phase of a capital trial that the defendant may have suffered brain damage on account of previous head injuries and exposure to toxic chemicals). Where the evidence does not warrant it, however, failure to call an expert does not amount to ineffective assistance of counsel. *Wilson,* 185 F.3d at 990. Here, an expert was not required to explain child molestation. A lay person could have judged petitioner's actions based on the evidence alone.

 Furthermore, counsel's decision not to call an expert was a trial tactic decision by counsel. A difference of opinion as to trial tactics does not constitute a denial of effective assistance. *United States v. Mayo,* 646 F.2d 369, 375 (9th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981). Tactical decisions deserve deference when: 1) counsel in fact bases trial conduct on strategic considerations; 2) counsel makes an informed decision based upon investigation; and 3) the decision appears to be reasonable under the circumstances. *Sanders v. Ratelle,* 21 F.3d 1446, 1456 (9th Cir.1994).

 Here, counsel based his decision on strategic considerations. He did not want to call a witness who would be easily attacked by the prosecution. Counsel felt that testimony from lay witnesses who knew petitioner personally would be more effective. Counsel made an informed decision; he states in his declaration that he was aware of *People v. Stoll*[8] and knew that there exists no widely accepted profile of a child molester (Clancy Decl. at 3–4). Under these circumstances, counsel's failure to call an expert to testify about petitioner's intent was reasonable, and did not deprive petitioner of ineffective assistance.

**B. Evidence of Improper Interviews**

Petitioner claims that counsel failed to thoroughly investigate whether the interviews with the children were overly directive. Petitioner also claims that counsel failed to discover and present evidence of Detective Dunn's lack of ability to conduct the interviews. In particular, petitioner takes issue with Clancy's failure to investigate one alleged child victim, Caitlin O'Leary, whose accusations against petitioner were demonstrably false and were not charged against petitioner. Petitioner reasons that this failure by counsel prejudiced petitioner's defense by presenting petitioner's criminal conduct as the only possible explanation for the events.

In his declaration, Clancy stated that, during petitioner's trial, Clancy attempted to portray the allegations against petitioner as the result of improper investigative techniques. To that end, Clancy averred that he would have presented to the jury evidence of exculpatory remarks by child victim/witnesses that were not reflected in police reports or police interview notes. Clancy stated that he also would have presented any available evidence that police investigators violated departmental policies or procedures recommended by authorities in the field. Clancy's declaration further stated that by the time of the declaration, Clancy could not remember specifically why he decided not to introduce evidence of O'Leary's allegations to the jury.

 A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Counsel must, at minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client. *Sanders,* 21 F.3d at 1457.

---

**8.** 49 Cal.3d 1136, 1152–61, 265 Cal.Rptr. 111, 783 P.2d 698 (1989) (describing as error the refusal of a trial court to admit expert opinion testimony that the defendant is not a sexual deviate when such evidence is offered to prove that a defendant did not commit a specific act of sexual misconduct).

Here, defense counsel made reasonable investigations into the factual basis for each interview. Counsel states in his declaration that he remembers that O'Leary's allegations were factually impossible, but those allegations were not charged against petitioner (Clancy Decl. at 4). There is nothing in the record to support petitioner's claim of Detective Dunn's poor interviewing skills or that further investigation by counsel would have turned up any additional evidence.

▆▆▆ Petitioner seems to suggest that counsel should have presented evidence that petitioner was suspected of molesting up to 70 children at the beginning of the police investigation. As the state correctly points out, had defense counsel presented that evidence, it could have prejudiced the defense because the jury could have regarded that as evidence of other crimes petitioner had committed. Counsel's decision not to present this evidence would seem to have been a strategic one, based by counsel on the facts and the law, and thus does not constitute ineffective assistance. Certainly, petitioner presented no evidence in the state court to the contrary and has not shown that the state court refused to let him develop evidence on this point.

## C. Records Impeaching James Halloway

Petitioner claims that there exist records in the form of statements made by Halloway, a psychiatric exam, and court hearings that would have impeached Halloway at trial. Petitioner claims that these records would have shown that Halloway was happy when he lived with the Shumates and wanted to stay with them. Petitioner claims that he received ineffective assistance of counsel because his trial counsel made no effort to obtain these records. It is unclear from the record whether Clancy knew of the existence of these records.

▆▆▆ Counsel did present testimony from Halloway's social workers as well as other foster children in the Shumates'

care. Their testimony stated that Halloway seemed happy with the Shumates and served to impeach Halloway's testimony. Petitioner fails to demonstrate that the records would have been anything other than cumulative. Counsel's decision to use the social worker's testimony instead of the records was a reasonable choice and does not amount to deficient performance. Petitioner failed to develop any details concerning these records or counsel's decision in the state court, so, on the present record, it would be difficult to find that trial counsel's approach was anything other than a reasonable trial choice.

## D. Evidence of Civil Suit Against Petitioner

Petitioner avers that counsel failed to investigate and present evidence of bias by the parents of the children witnesses as illustrated by a pending civil action against petitioner brought by those parents. Respondent first argues that petitioner failed to present this claim to any state court. However, petitioner did address this claim in a state habeas petition, so no procedural default exists.

▆▆▆ Counsel stated in his declaration that he had been aware of the civil suit and had considered bringing it into evidence to show witness bias. He had rejected that tactic because he did not want to expose the defense to evidence of the traumatic effects of the touchings (Clancy Decl. at 4–5). Petitioner counters that the witness who may have suffered the most trauma, Danielle Barrantes, attributed that trauma to someone else. This ignores the trauma suffered by the other children and the negative impact to the defense if evidence of their trauma caused by petitioner had been presented. Counsel made a reasonable and informed tactical decision based on strategic considerations that was within his range of discretion. *Sanders,* 21 F.3d at 1456. Petitioner did not suffer ineffective assistance on this conduct.

### E. Character Evidence

Petitioner contends that counsel's failure to present any character witnesses favorable to petitioner; and failure to allow petitioner to take the stand in his own defense, led to a weaker defense and thus, ineffective assistance.

■ Counsel stated in his declaration that he had been aware of a substantial amount of character evidence for petitioner, but there also existed a substantial amount of character evidence against petitioner. Counsel chose not to present character evidence of petitioner's non-deviant sexual behavior with children because he feared that it would allow the prosecution to present evidence of other touchings by petitioner (Clancy Decl. at 4). This was a reasonable tactical decision by counsel.

### 7. Newly Discovered Evidence

Petitioner claims to have discovered new evidence impeaching two prosecution witnesses.[9] In a letter written to the trial judge in support of a lenient sentence for petitioner, a 15–year–old author stated that, prior to petitioner's trial, one of the victims who testified against petitioner claimed that petitioner never had acted improperly toward the victim ("inconsistent victim statement"). Also, in a declaration by a paralegal employed by petitioner's attorney ("paralegal declaration"), the paralegal avers that she spoke with a Pleasanton police officer after petitioner's trial, and that the officer denied having known petitioner before petitioner's trial. That statement contradicts the testimony of a trial witness, Ruth Grajeda, who claimed that, prior to petitioner's trial, the officer mentioned that he and petitioner had known each other for a number of years.

■ With respect to the inconsistent victim statement, the Court has read the trial testimony of the victim witness. On both direct and cross-examination, the witness admitted that on repeated occasions he had previously lied about petitioner's conduct, i.e., had denied that petitioner had ever touched him improperly, until he finally decided to tell the truth (RT 1111–33). At best, the additional evidence of such lying would have been cumulative.

■ The paralegal declaration, at best, would have provided impeachment evidence on a collateral issue. Moreover, there is no direct contradiction. To be a direct contradiction, the officer would have had to have testified in contradiction to the new evidence. He did not. Petitioner's claim therefore is denied.

### 8. Alleged Jury Misconduct

After petitioner's trial, two members of the jury made statements—one to a reporter, the other to petitioner's counsel—suggesting that members of the jury may have discussed petitioner's failure to testify during their deliberations. Petitioner obtained declarations from two additional jurors who had heard or participated in similar discussions. He moved for a new trial and an evidentiary hearing. Among other evidence, petitioner had planned to offer the testimony of the reporter, to whom the jury foreman had spoken after the trial. According to the reporter, the foreman had explained that the jury chose to believe the child victims because no contrary evidence—including petitioner's testimony—had been offered. No evidentiary hearing was granted.

■ To investigate petitioner's allegations, the trial court wrote to the remaining jurors, asking each to inform the court of any improper discussion during deliberations. In return, the trial court received declarations or live statements from eight jurors, including the two whose alleged statements had sparked the investigation. Based on those statements, and the two declarations submitted by petitioner, the trial judge concluded that a juror had commented during the course of the trial on

---

**9.** This evidence was not presented to the state courts in petitioner's appeal and habeas petition.

petitioner's failure to testify. The trial judge determined, however, that the statement had not been made during actual deliberations. Further, the judge concluded that, upon hearing the comment, the jury foreperson immediately admonished other jurors not to discuss that subject, thus curing the misconduct. Based on those findings, the trial judge denied both of petitioner's motions. This Court cannot say that the trial court's conclusion amounted to an "unreasonable determination of the facts in light of the evidence presented. . . ." 28 U.S.C. § 2254(d)(2).

### 9. Use of Probation Report in Sentencing

In determining petitioner's sentence, the trial court relied in part on a probation officer's report that contained allegations of uncharged wrongdoing by petitioner. Although petitioner had access to the report, petitioner was not provided with a key for determining the identities of some of the victims referenced until two days before final sentencing. Prior to sentencing, the trial judge also read what he described as hundreds of letters from the community. Petitioner requested but was denied access to all of these letters. Petitioner testified twice for a combined hour and one-half in rebuttal to the report. His counsel was given additional time at petitioner's final sentencing hearing to contest the report's allegations. Petitioner was not, however, permitted to cross-examine the witnesses whose charges appeared in the report, which he now claims denied him due process.[10]

 The constitutional guarantee of due process is fully applicable at sentencing. *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). To successfully challenge on due process grounds the use of a probation report in sentencing, a defendant must show both that the information in question is false or unreliable and that the information was

demonstrably made the basis for the petitioner's sentence. *United States v. Columbus,* 881 F.2d 785, 787 (9th Cir.1989). Here, petitioner was given ample opportunity to dispute alleged inaccuracies in the probation report, and was permitted to submit to the trial court a binder of letters from his own supporters. What's more, petitioner has failed to demonstrate that the trial judge based petitioner's sentence on the alleged inaccuracies. Therefore, this Court is unable to conclude that the state court of appeal's resolution of this issue was unreasonable. With respect to the letters, petitioner has failed to point to any part of the record that indicates the trial judge considered their contents during sentencing. Nor does petitioner specifically alleged that the trial judge did consider them. This Court therefore denies petitioner's claim.

### 10. Judicial Bias

Petitioner claims the trial court demonstrated bias against him throughout his trial, thus violating his rights of due process. First, petitioner alleges that the court granted an unnoticed, oral motion by the prosecutor to quash all of petitioner's subpoenas related to petitioner's investigation of the probation officer's report. According to petitioner, at the time the trial court did so it was in possession of the subpoenas, although neither petitioner nor the prosecution had officially filed copies. The incident led petitioner to believe that the prosecution and trial court were conspiring against him. Second, petitioner alleges that the trial court distributed to two jurors declarations that had been prepared by the prosecutor and that averred that no juror misconduct had occurred. Third, petitioner claims that the trial court failed to pay enough attention to the evidence to permit the court to make informed rulings. Fourth, petitioner alleges that the trial court failed to enforce an order that the prosecutor turn over 100

---

10. The state court of appeal denied petitioner's claim with respect to the probation report. It failed to address the effect of the trial

judge's having read the letters from members of the community.

letters that had been received by the prosecutor and that criticized the prosecutor's handling of petitioner's case. According to petition, the prosecutor instead turned over a 12 letter sample. Fifth, petitioner complains that the trial court disparaged petitioner for maintaining his innocence.

■■■■ The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). In the context of habeas corpus review, however, a federal court shall reverse a state conviction only where "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir.1995) *cert. denied*, 517 U.S. 1158, 116 S.Ct. 1549, 134 L.Ed.2d 651 (1996).

The state court of appeal found that the trial judge did not increase petitioner's sentence on account of petitioner's maintenance of his innocence. Nor did the state court of appeal find any indication of ex parte communications between the prosecutor and trial court, or any other behavior that would evidence a bias against petitioner. Accordingly, the state court of appeal rejected petitioner's claim of bias. Petitioner has not demonstrated that this decision was an unreasonable application of United States Supreme Court precedent. Petitioner's claim therefore is denied.

### 11. Sufficiency of Evidence

Petitioner was convicted under California Penal Code § 288(a), which provides:
 Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six or eight years.

Petitioner argues that the evidence of his conduct, consisting largely of uncorroborated statements by child victims, was inadequate to establish either his commission of lewd or lascivious acts or his lewd intent.

■■■■ In collaterally reviewing a state court conviction for sufficiency of evidence, a federal court does not determine whether the prosecution established the petitioner's guilt beyond a reasonable doubt. Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). When faced with a record that supports conflicting inferences, the federal court "must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296–7, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

■■■■ Construed in a light most favorable to the prosecution, the evidence presented at petitioner's trial supports a rational finding of guilt beyond a reasonable doubt. Each of petitioner's convictions was supported by specific victim testimony. Petitioner presented his argument that the complained of conduct couldn't have occurred under the alleged conditions, and the jury resolved that apparent contradiction against petitioner. Petitioner lost that argument and will not be allowed to re-hash the weight of the evidence here. As for petitioner's mental state, the large number of acts charged plus the Bromberg testimony adequately support a finding that the touching was not a series of innocent mistakes.

### 12. The Court Must Deny Petitioner's Request for an Evidentiary Hearing

Prior to passage of AEDPA, a petitioner was entitled to an evidentiary hearing only where (1) the petitioner alleged facts that, if proved true, would entitle the petitioner to relief, and (2) the state finder of fact did not, "... after a full and fair hearing, reliably [find] the relevant facts." *Caro v. Calderon,* 165 F.3d 1223 (9th Cir.1999). In other cases, the decision to conduct an evidentiary hearing in a habeas corpus case was for the most part "... firmly committed to the discretion of the district courts ..." *Baja,* 187 F.3d at 1077–8 (9th Cir.1999). AEDPA, however, has "... reduced considerably the degree of the district court's discretion" by imposing threshold requirements that must be met before a request for an evidentiary hearing may be entertained. *Id.* at 1078.

■■■■ First, and perhaps most damaging to petitioner's request, a petitioner generally shall not be granted an evidentiary hearing where the petitioner failed in state court to develop a factual basis for his or her claim. 28 U.S.C. § 2254(e)(2). Under AEDPA, a district court faced with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support the petitioner's claim. *Baja,* 187 F.3d at 1078. Where no such basis exists, meaning the district court is incapable of fully adjudicating the petitioner's claim, a district court nevertheless *must* refuse to grant an evidentiary hearing where the petitioner "... has failed to develop the factual basis ... in state court proceedings ..." 28 U.S.C. § 2254(e)(2); *Baja,* 187 F.3d at 1078.[11] A petitioner will not be held to have "failed to develop a factual basis" where the state court denied the petitioner's request to do so. The contrary conclusion will be reached, however, where a petitioner could have but failed to present evidence relevant to his federal claims in state court. *Id.* at 1078–9.

■■■■ Second, 28 U.S.C. § 2254(e)(1) requires that, in federal habeas corpus proceedings, "... a determination of a factual issue made by a State court shall be presumed to be correct." A petitioner seeking to rebut that presumption must do so by "clear and convincing evidence". *Ibid.* In interpreting 28 U.S.C. § 2254(e)(1)'s precursor,[12] the Supreme Court defined the phrase "factual issue" as inclusive of "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators ...'" *Thompson v. Keohane,* 516 U.S. 99, 109–10, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), quoting *Townsend v. Sain,* 372 U.S. 293, 309, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469 (1953). "Factual issue" includes matters such as a defendant's competency to stand trial and a juror's impartiality. The resolution of such issues "depends heavily on the trial court's appraisal of witness credibility and demeanor." *Thompson,* 516 U.S. at 111, 116 S.Ct. 457. By contrast, "factual issues" excludes matters such as the voluntariness of a confession, the effectiveness of counsel's assistance and potential conflicts of interest, given the "uniquely legal dimension" of such issues. *Id.* at 111–12, 116 S.Ct. 457, quoting *Miller v. Fenton,* 474 U.S. 104, 116, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

Put differently, all federal habeas claim must be based on facts already developed in the state court record except in the rare case in which a petitioner properly requested and was denied an opportunity to present or to develop evidence that would have entitled the prisoner to relief (or in one of the rare statutory exceptions). Pe-

11. That limitation is subject to two statutory exceptions, 28 U.S.C. § 2254(e)(2)(A)(i)–(ii), neither of which petitioner has argued apply to his request.

12. 28 U.S.C. § 2254(d) (1995) required that, in federal habeas corpus proceedings, "... a determination after a hearing on the merits of a factual issue, made by a State court ... shall be presumed to be correct ...", subject to enumerated exceptions.

titioner's request for an evidentiary hearing fails to satisfy any such exception.

### A. IAC Claims

As discussed above, the effectiveness of counsel is not a "factual issue" within the meaning of 28 U.S.C. § 2254(e)(1). Therefore, no presumption of factual correctness will attach to the state court's conclusions regarding the performance of petitioner's trial counsel. Nevertheless, to the extent that such conclusions were based on "basic, primary, or historical facts", this Court will presume such facts to be correct, absent a showing by clear and convincing evidence that they are not.

#### i. Trial Counsel's Failure to Present Evidence of Petitioner's Lack of Psychopathy

 Petitioner seeks to present at an evidentiary hearing the testimony of two witnesses—Clancy and an "expert[ ] on how to defend against multiple charges of child sexual abuse"—to prove that petitioner received ineffective assistance of counsel. Petitioner's request must be denied for two reasons. First, as petitioner highlights in his First Offer of Proof,[13] petitioner attached declarations from both witnesses to his state habeas corpus petition. Petitioner fails to argue that any state court prohibited petitioner from incorporating into those declarations the further testimony that petitioner now seeks to offer. This Court therefore must conclude that, to the extent those witnesses had more to say, petitioner failed to develop the factual basis of his claim within the meaning of AEDPA.

 Second, as petitioner admits in his offer, the gravamen of each witness's testimony already appears in the state record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir.1998) (holding that where petitioner's claims "can be resolved by reference to the state court record", an evidentiary hearing will be regarded as futile and, accordingly, will be denied). Clancy explained in his declaration the reasons for his failure to offer at trial "*Stoll* evidence."[14] As for petitioner's expert, petitioner admits that her testimony at an evidentiary hearing would be "in conformity" with, and would "elaborate on," her declaration (Offer, p. 4, ln.7). That being the case, the Court finds that the record already contains sufficient evidence to resolve petitioner's claims.[15]

#### ii. Trial Counsel's Failure to Investigate the Investigation

Petitioner offers to present at an evidentiary hearing the testimony of more than twelve individuals, as well as other evidence, regarding Clancy's alleged failure to investigate the state's investigation of petitioner. As in the case of his ineffective assistance of counsel claim, however, petitioner fails to demonstrate that he was precluded from offering this additional evidence in state court. Indeed, the testimony of many of petitioner's proffered witnesses already appears—either in

---

**13.** On October 4, 1999, in response to petitioner's request for an evidentiary hearing, the Court ordered petitioner to submit an offer or proof, in two parts, that itemized: the specific evidence that petitioner sought to offer at a hearing; the relevance of such evidence to any alleged state court constitutional error; where in the state court record the evidence was brought to the attention of a state court; and where in the state court record petitioner attempted, but was denied the opportunity, to present the evidence to a state court. Respondent was entitled to, and did, submit a response to each of petitioner's offers. Petitioner also submitted to the Court a reply to the respondent's response to petitioner's first offer of proof. The Court had

not ordered petitioner to do so, but nevertheless reviewed petitioner's submission.

**14.** As discussed in section 6(A) (Ineffective Assistance of Counsel, Expert Testimony of Petitioner's Psychological State) of this order, *Stoll* evidence is expert opinion testimony that the defendant is not a sexual deviate. Such testimony sometimes is offered to prove that a defendant did not commit a specific act of sexual misconduct. *See Stoll*, 49 Cal.3d at 1152–61, 265 Cal.Rptr. 111, 783 P.2d 698.

**15.** See section 6(A) (Ineffective Assistance of Counsel, Expert Testimony of Petitioner's Psychological State)

declarations or trial testimony—in the state court record. The Court therefore concludes that, to the extent that relevant facts do not appear in the state record, petitioner has failed to develop, without fault by the state courts, a factual basis for his claim. Accordingly, the Court denies petitioner's request for an evidentiary hearing.

### iii. Trial Counsel's Failure to Present Favorable Character Evidence

Petitioner requests the opportunity to present evidence, including the testimony of five witnesses, regarding Clancy's failure to present character evidence favorable to petitioner. As with petitioner's first two requests, however, petitioner offers and the Court finds no excuse for petitioner's failure to develop the state court record as it relates to these two claims.[16]

### iv. Trial Counsel's Failure to Obtain Halloway's Juvenile Court Records

 Prior to petitioner's trial, the state conducted hearings regarding whether to remove from petitioner's home foster child James Halloway, who later testified against petitioner. The boy was left in petitioner's case. Based on speculation that the hearing record might contain statements that would have impeached the boy's trial testimony, petitioner now seeks to present evidence that Clancy was ineffective for failing to obtain that record. Again, however, petitioner has failed to demonstrate in this Court that he was denied the opportunity to develop such evidence in state court.[17]

### B. Prosecutorial Misconduct/Brady Claims

### i. Alleged Failure to Disclose the Source of Allegedly Inconsistent Statement

Petitioner seeks to present evidence that the prosecutor failed to inform petitioner of the source of a statement that apparently contradicted the testimony of a child witness. As discussed in section 3(A) of this order, that statement, which the state trial court concluded was made by the witness's mother, was contained in a report by child welfare worker Tamara Clark. The Court denies petitioner's request for two reasons. First, as petitioner readily admits in his offer, much of the evidence that petitioner seeks to present already exists in the state court record. Two of the three proposed witnesses prepared declarations that were submitted with petitioner's state and federal habeas corpus petitions. The third, Clark, testified both at trial and at an in camera proceeding. Petitioner thus had ample opportunity to probe the circumstances surrounding the report. To the extent that petitioner could have done more, the Court concludes that he failed to develop the factual basis for his claim.

Second, petitioner has failed under *Caro* to demonstrate that his allegations, if

---

16. It bears mentioning that, even if petitioner's request were not barred under AEDPA, it nevertheless would fail under *Caro* and *Totten*. In the declaration filed with petitioner's state habeas corpus petition, Clancy admitted that he was aware of character evidence favorable to petitioner. Thus, petitioner's claim may be resolved on the state record. Clancy failed to present such evidence, however, for fear that it would open the door to evidence of other instances of petitioner's alleged sexual misconduct. As discussed in section 6(E) (Ineffective Assistance of Counsel, Character Evidence) of this order, the Court finds the state court of appeals' conclusion that Clancy's decision failed to violate *Strickland* to be a reasonable application of that law.

17. What's more, petitioner has failed under *Caro* to allege facts that, if proved, would entitle petitioner to relief. Petitioner's claim is based on nothing more than an assumption that the records in question contain statements impeaching Halloway's testimony. Petitioner has failed to demonstrate what those statements may be, much less how they might have "... led to a more credible argument ..." *Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir.1994). To merit habeas corpus relief, a petitioner must do more than lodge "... conclusory suggestions that his trial and state appellate counsel provided ineffective assistance ..." *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir.1995).

proved true, would entitle him to relief. With respect to procedure, petitioner's claim that the prosecutor failed to inform him of the statement's source is not before this Court, as petitioner failed to include it in his federal petition. In his federal filing, petitioner complained only that the prosecutor possessed but failed to produce an unredacted version of Clark's report—a claim foreclosed by the state appellate court's findings of fact. As discussed above, this Court presumes those findings to be correct, absent a showing by clear and convincing evidence that they are not. With respect to the substance of the claim, petitioner has failed to point to any authority suggesting that the prosecutor bore a constitutional responsibility to inform petitioner of Clark's sources, regardless of whether the prosecutor knew what those sources were. Petitioner's request for an evidentiary hearing on this claim therefore is denied.

### ii. Alleged Failure to Turn Over Taped Victim/Witness Interviews

Petitioner requests an evidentiary hearing to present evidence that the prosecutor failed to turn over a number of taped interviews of child victim/witnesses. As with petitioner's previous claims, the Court finds that petitioner failed to develop in state court a factual basis for his claim. Nor does petitioner argue that the state courts prevented him from doing so. Additionally, petitioner fails to demonstrate under *Caro* that the prosecutor's failure to turn over ten or twelve interview tapes, even if true, would entitle petitioner to relief. Petitioner makes no mention of whose statements are contained on the tapes, or of how such information would have benefitted petitioner's defense. As described elsewhere, petitioner thus fails to state a cognizable *Brady* claim. Accordingly, his request for an evidentiary hearing is denied.

### iii. Prosecutorial Misconduct Regarding Statement of Complaining Witness

Petitioner seeks to present evidence regarding the potential bias of witness Leslie Barrantes, whose statement the prosecutor failed to produce prior to petitioner's trial.[18] That evidence consists of the witness's testimony and a series of declarations and other documents that petitioner attached to his state habeas corpus petition.

With respect to the prosecutor's wrongdoing, the Court again finds that, to the extent that petitioner needs to present additional evidence, he failed to develop in state court a factual basis for his claim. Nor does petitioner's claim satisfy the requirements of *Caro* and *Totten.* Assuming the facts alleged by petitioner to be true, the Court fails to find that the state's denial of his *Brady* claim amounted to an unreasonable application of that law. As well, now that the prosecutor has tendered the withheld statements, the Court has all the evidence required to fully evaluate petitioner's *Brady* claim. The Court therefore must deny petitioner's request for an evidentiary hearing on this subject.

With respect to the balance of petitioner's arguments, the Court rejects petitioner's apparent attempt to merge his *Brady* claim with an insufficiency of the evidence claim. Petitioner has failed to show that any of his claims rely on a new rule of constitutional law. 28 U.S.C. § 2254(e)(2)(A)(i). Nor has he demonstrated, with the exception of the witness statement that is the subject of his *Brady* claim, that he seeks to offer facts not previously discoverable through his own diligence. 28 U.S.C. § 2254(e)(2)(A)(ii). The Court therefore refuses to entertain the argument that the introduction of petitioner's proffered evidence likely would have lead to his acquittal.

---

**18.** For a description of the statements, see section 4(A)(i) (Alleged Prosecutorial Misconduct, Brady Claims, Barrantes Statements)

## C. Errors by Trial Court

### i. Limitation on Testimony of Petitioner's Expert Witness

Petitioner seeks to present at an evidentiary hearing the testimony of Dr. Lee Coleman, an expert in the questioning of child sex abuse victims who testified at petitioner's trial. Petitioner seeks to have Coleman testify regarding a handful of subjects, ranging from the improper nature of the questions asked of the children who testified against petitioner to evidence of "institutional bias" among the police who investigated petitioner's wrongdoing. Petitioner suggests that the testimony he proffers is relevant to his claim that the trial court impermissibly restricted Coleman's trial testimony.

Petitioner fails to allege or demonstrate, however, that he was barred from presenting this evidence to the state courts. Petitioner raised an identical claim in his state court appeal. At that time, he failed to offer a declaration by Coleman, choosing to rely instead on the trial reporter's transcript. Because he failed to develop a factual basis for this claim in state court, petitioner is barred from doing so now.

### ii. Refusal to Permit Examination of Prosecutor Jill Hiatt

Petitioner seeks to present the testimony of prosecutor Jill Hiatt, who petitioner accuses of improperly "thrust[ing] herself into the role of investigator in response to numerous letters sent to her office criticizing her management of the case." According to petitioner, the prosecutor, acting as investigator, elicited accusations of wrongdoing from four witnesses who previously had denied that petitioner had sexually assaulted them. In an attempt to undermine those accusations, petitioner attempted to call Hiatt to the stand during his trial. The trial court refused the request.

To the extent that he failed to develop a factual basis for this claim, petitioner is barred from doing so now. Although the trial court prohibited petitioner from examining Hiatt, it permitted him to examine before the jury both the primary police investigator and the prosecutor's own investigator. One or both of those individuals were present at each of the witness interviews that Hiatt attended. To the extent that Hiatt acted improperly, one or both could have testified to that fact. If petitioner failed to avail himself of the opportunity to probe that testimony, he is held to have forfeited it.

What's more, petitioner fails to demonstrate under *Caro* that he is entitled to an evidentiary hearing. Even if what petitioner alleges is true—that the prosecutor participated in witness interviews in which individuals who earlier had denied petitioner's improper conduct changed their stories—he has failed to demonstrate that he would be entitled to relief.[19] Petitioner's request for an evidentiary hearing on this matter therefore is denied.

### iii. Reliance on Probation Report in Sentencing

Petitioner seeks to offer at an evidentiary hearing testimony from Leslie Pankopf, the probation officer whose report petitioner claims the trial court relied on in sentencing petitioner. Petitioner plans to ask Pankopf about her failure to timely provide petitioner with the identities of individuals interviewed for the report. He further plans to ask her about alleged errors and misstatements in the report, and Pankopf's methods for verifying the report's contents. Petitioner argues that such evidence is relevant to his claim that reliance on the probation report during his sentencing violated his due process rights.

Again, petitioner's request must be denied. As discussed in section 9 (Use of Probation Report in Sentencing) of this order, the trial court permitted petitioner to testify twice for a combined hour and one-half in rebuttal to the report. Nor does petitioner alleged that the state court of appeal prohibit him from submitting declarations and other evidence in support

19. See section 3(c) (Failure to Admit Evidence, Testimony of Prosecutor).

of his claim. To the extent that petitioner failed to develop additional facts, he is held to have forfeited his opportunity to do so.

## D. Other Claims

### i. Alleged Juror Misconduct

Petitioner seeks an evidentiary hearing to develop a factual basis for his claim that his jury discussed, and possibly partly based their verdict on, petitioner's failure to testify. Petitioner seeks to elicit testimony from, among other witnesses, the jury foreman, a reporter to whom the foreman allegedly disclosed the jury's misconduct, and a juror who claims to have heard or participated in numerous conversations regarding petitioner's failure to testify. Petitioner requested, but was denied by the trial court, an opportunity to hold an evidentiary hearing regarding whether the alleged juror misconduct required that petitioner receive a new trial.

The Court must deny petitioner's request. First, although the trial judge refused to hold a hearing, he did review declarations from nine jurors and hear testimony from one other. Of those, only one averred to having heard or participated in improper conversations about petitioner's failure to testify. After reviewing that evidence, the trial court concluded that only one mention had been made of petitioner's failure to testify, and that any effect had been cured by a warning from the jury foreperson. This Court must presume that resolution to have been correct, and petitioner fails to provide this Court with clear and convincing evidence to the contrary.

Second, the evidence that petitioner seeks to proffer already is in the state court record. Petitioner seeks to elicit testimony from six witnesses, each of whom submitted declarations to either the trial court or the state court of appeal. Those declarations encompass the substance of the testimony that petitioner now seeks to elicit. Thus, this Court is capable of resolving petitioner's claim without the benefit of an additional hearing.

### ii. Allegedly Improper Investigation

Finally, petitioner requests an evidentiary hearing to present evidence that the techniques used to investigate him were improper and created a substantial probability of false and unreliable accusations. Petitioner is imprecise as to the scope of the hearing that he seeks, except to note that it would encompass witnesses and other evidence referred to in seven of his other requests. His request admits, however, that evidence of the unreliability of the charges against him "was presented to the state court by Petitioner as set out in each of the claims mentioned in this section."

It is difficult for the Court to evaluate petitioner's request, given his failure to specifically identify the evidence that he seeks to offer and its relevance to the claimed constitutional error. The Court takes petitioner at his word, however, that he presented evidence relevant to this claim to the state court. The Court further notes that petitioner fails to allege that he was barred from presenting such evidence in any state tribunal. Thus, the Court concludes that, to the extent petitioner failed adequately to develop a factual basis for his claim in state court, he is prohibited by AEDPA from doing so here.

## CONCLUSION

For the reasons outlined above, the petition for a writ of habeas corpus and request for evidentiary hearing are DENIED. The Clerk of the Court SHALL close the file.

**IT IS SO ORDERED.**